WILLIAM H. MARSTON, Respondent, *v.* JAY GOULD, Appellant.

The parties engaged in a joint adventure in the purchase and sale of E. R. Co. stock under an agreement, by which defendant was to furnish the funds, and to bear the loss if the operations should result in loss ; the net profits, if any, to be divided in certain proportions. No provision was made fixing a limit of time for the continuance of the operations, or for closing them and settling the accounts. *Held*, that the arrangement was terminable at any time at the will of either of the parties, and that either could maintain an equitable action against the other for an accounting or for the adjustment of losses sustained by the misconduct of the other, without regard to the question whether or not they were to be regarded as partners *inter sese*.

Statement of case.

By arrangement, the brokers through whom the joint operations were conducted kept the account thereof under the letter "M." By direction of defendant this account was closed, and the stock on hand purchased under the agreement was transferred to his individual account. It did not appear that the certificates of the stock were disturbed. In January, 1872, there was a sudden rise in the market, when plaintiff made a formal call upon defendant to sell the stock, and account to plaintiff for his portion of the profits, and upon his failure to comply, brought this action. Upon the trial defendant offered to prove that he sold all of the stock held on "M" account before January 9, 1872. This was excluded solely because not connected with an offer to prove that the sale was made avowedly on joint account. *Held*, error; that if defendant had authority to sell, it was not necessary to make known at the time of the sale that it was made on joint account, and if he made the sale in good faith, in the ordinary way, plaintiff was bound.

Where specific objection is made to evidence offered, every ground of objection not specified which is capable of being obviated by evidence, is waived.

(Argued February 12, 1877; decided April 10, 1877.)

APPEAL from judgment of the General Term of the court of Common Pleas for the city and county of New York, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

The nature of the action and the facts sufficiently appear in the opinion.

*Thos. G. Shearman*, for the appellant. The referee erred in awarding damages instead of directing a sale of the stock. (*Cary* v. *Williams*, 1 Duer, 667; *Azel* v. *Betz*, 2 E. D. Smith, 188; *Sadler* v. *Lee*, 6 Beav., 324; *Watts* v. *Girdlestone*, id., 188; *Duffy* v. *Duncan*, 32 Barb., 587; *Hart* v. *Ten Eyck*, 2 J. Ch., 62, 117; *Bailey* v. *Ryder*, 10 N. Y., 363, 370; *Saltus* v. *Genin*, 3 Bosw., 250; *Ward* v. *Davis*, 2 Sandf., 502, 510; *Bradley* v. *Aldrich*, 40 N. Y., 504; *Wright* v. *Delafield*, 25 id., 266; *DeGraw* v. *Elmore*, 50 id., 1; *Walter* v. *Bennett*, 16 id., 250; *Matthew* v. *Cady*, 16 id., 651; *Moore* v. *McKibbin*, 33 Barb., 246; *Ransom* v. *Wetmore*, 39 id., 104.) Plaintiff and defendant were not partners in a joint adventure, but plaintiff was only an agent employed by

defendant. (*Lamb* v. *Grover*, 47 Barb., 317; *Lewis* v. *Greider*, 51 N. Y., 231; *Merwin* v. *Playford*, 3 Robt., 702; *Strong* v. *Place*, 4 id., 385; 51 N. Y., 627; *Cummings* v. *Mills*, 1 Daly, 520; *Muzzy* v. *Whitney*, 10 J. R., 226; *Chase* v. *Barrett*, 4 Paige, 148; *Rishton* v. *Grissell*, L. R. (5 Eq.), 326; *Shaw* v. *Galt*, 16 Irish C. L., 350; *Hesketh* v. *Blanchard*, 4 East, 144; *Waugh* v. *Carver*, 2 H. Bl., 235; *Hazard* v. *Hazard*, 1 Story C. C., 375; *Jordan* v. *Wilkins*, 3 Wash. C. C., 110; *Lintner* v. *Milleber*, 47 Ill., 178; *Hoile* v. *York*, 27 Wisc., 209; *Crawford* v. *Austin*, 34 Md., 49; *Elsworth* v. *Pomeroy*, 26 Ind., 163; *Chisholm* v. *Cowles*, 42 Ala., 179; *Mason* v. *Potter*, 26 Vt., 724; *Kellogg* v. *Griswold*, 12 id., 294; *Lowry* v. *Brooks*, 2 McCord, 421.) Plaintiff and defendant not being partners, and plaintiff not having advanced any money or put anything at risk, had no title to any of the stock purchased. (*Horton* v. *Morgan*, 19 N. Y., 170; *Stewart* v. *Drake*, 46 id., 449.) There being no partnership, plaintiff could not sue for an accounting, and defendant was entitled to a trial by jury. (*Smith* v. *Leveaux*, 2 DeG. J. and S., 1; *Moxon* v. *Bright*, L. R. (4 Ch.), 292; *Hazard* v. *Hazard*, 1 Story C. C., 371.) If there was a partnership, plaintiff having abandoned his interest when the speculation was unprofitable, is barred from claiming any of the profits. (Lindley on Part. (3d Ed.), 945; *Senhouse* v. *Christian*, 19 Beav., 356, note; *Prendergast* v. *Turton*, 1 Y. & C., 98; 13 L. J. (Ch.), 268; *Clegg* v. *Edmondson*, 8 DeG. M. & G., 787; *Reilly* v. *Walsh*, 11 Irish Equity, 22; *Jekyl* v. *Gilbert*, McN. Cases, 29.) An agent, trustee or partner need not make a sale avowedly for his principal or partner in order to bind him. (*Case* v. *Abeel*, 1 Paige, 393; *Lewis* v. *Greider*, 51 N. Y., 231; 49 Barb., 606.) Where one party puts in evidence entries in the books of a concern, the adverse party may put in evidence, without further proof, other entries in the same or even other books of the same concern, and essential to complete the account. (*Pendleton* v. *Weed*, 17 N. Y., 72; *Larue* v. *Rowland*, 7 Barb., 107; *Dewey* v. *Hotchkiss*, 30 N. Y., 497.) Upon questions of

intention, where it is not unequivocally expressed, a witness can be interrogated and made to declare what was his own intention, although unexpressed. (*Pope* v. *Hart*, 35 Barb., 630; *Whedden* v. *Wilson*, 44 Me., 19; *Seymour* v. *Wilson*, 14 N. Y., 567; *Forbes* v. *Waller*, 25 id., 430; *Matthews* v. *Poultney*, 33 Barb., 127.)

*W. W. MacFarland*, for the respondent. Plaintiff and defendant were co-partners in respect of the dealings contemplated. (*Burckle* v. *Eckhart*, 1 Den., 337; 3 Comst., 132; *Lewis* v. *Greider*, 51 N. Y., 231; *Leggett* v. *Hyde*, 58 id., 272; *Dob* v. *Halsey*, 16 J. R., 33; Aunin's Manual of Civil Law, 258, 259; 1 Domat Civil Law, 346, Par. 750; Parsons on Part., 442, 102; Collyer on Part., § 18; *Ex parte Langdale*, 18 Ves., 301; *Man. Brass Co.* v. *Sears*, 45 N. Y., 797; *Whitney* v. *Ludington*, 17 Wis., 140; *Niehoff* v. *Dudley*, 40 Ill., 406.) The shares represented by the account " M " were the property of the partnership, and defendant was liable for appropriating them. (Story's Eq., §§ 792, 793, 1211, 1212, 187; *Steel* v. *Babcock*, 1 Hill, 537; *Middleton* v. *Middleton*, 1 J. & W., 96; *Waltham's Case*, 11 Ves., 638; 14 id., 290; Perry on Trusts, § 169; Kerr on Fraud and Mistake, 273; *Scott* v. *Rogers*, 31 N. Y., 676; *Blot* v. *Boiceau*, 3 id., 79.)

ALLEN, J. This action grows out of a joint adventure undertaken by the parties in 1871, in the purchase and sale of shares of the capital stock of the Erie railway company, in which the funds for the purchase were to be provided by the defendant, who was to bear the loss, if a loss should ensue, and in which any profit that might accrue was to be divided in the ratio of four-fifths to the defendant and one-fifth to the plaintiff.

The referee finds that the purchases and sales were to be "manipulated" by the plaintiff, but does not define that term or find in what sense it was used by the parties, or what was the limit of the powers and duties of each of the parties in the contemplated transactions.

Most of the purchases were made by direction of the plaintiff to the firm of brokers through whom all the operations were to be effected, and of which firm the defendant was a special partner. The defendant frequently gave directions, and when he objected to a purchase or sale his objection prevailed. There was no limit of time fixed for the continuance of the operations, and the only restriction was in the number of shares which should be held at any one time, and that limit was fifty thousand. No provision was made for the closing out of the hazard and settling the accounts; the referee merely finding all that the evidence warranted on that subject, that there was "no agreement that the transactions in said buying and selling should be had without the sanction or direction or approval of the defendant, nor that the defendant should have the entire control of the operations, or close the same up when he should deem it desirable."

The arrangement could have been terminated at any time by the mutual consent of the parties, or at the option of either upon notice to the other. The connection was dissolvable at the will of either of the parties. (3 Kent, 53; Story on Part., § 269.) Upon the termination, the stock on hand would be disposed of and the transaction wound up as the parties might agree, or in case of a failure to agree, pursuant to law. Whether the parties were strictly partners *inter sese* or as to third persons, is not material. They stood in that mutual and confidential relation to each other, and had that joint interest in the result of the adventure that either could demand an accounting with a view to ascertain the profit or loss, and ascertain their respective rights. The accounts would be of a series of transactions and a course of dealings by the parties on joint account entirely isolated from other transactions and dealings of the parties, either jointly or individually, and an equitable action for an accounting would be the appropriate remedy by either party. The profits which were to be divided were the net profits of all the dealings under the arrangement, the result of all the

transactions in the aggregate, and not the gross profits upon the sales or the profit upon each transaction. This made the plaintiff directly interested in the losses as well as the profits, and distinguishes the arrangement from those in which a participation in the gross profits has been held to be but a measure of compensation for services. A share in the net profits is an interest in the profits as profits, and implies a participation in the profits and losses. If this does not constitute a technical partnership between the parties *inter sese*, an adjustment and a division of the net profits requires an accounting, and to that the plaintiff was entitled. (*Bond* v. *Pittard*, 3 M. & W., 357; *Mumford* v. *Nicoll*, 20 J. R., 611; *Pearson* v. *Skelton*, 1 M. & W., 504; Story on Part., § 34, 56.)

Whether the property in the shares purchased was in the plaintiff and defendant as partners or not, the relation between them was of the same confidential and fiduciary character as between partners, and by analogy the same remedy in equity may be had for a violation of the trust by either, and a misappropriation or diversion of the stock or funds in which they had a common interest, or from which profits were to be made. · Courts of equity hold each partner responsible to the other for all losses sustained by the misconduct or a misapplication of the partnership funds. (Story on Part., § 233.) The same remedy exists against any one occupying the position of a *quasi* partner involving the same trust, duties and obligations. The action of the plaintiff was not therefore misconceived, whether it be regarded as an action for an accounting and a distribution of the profits, or for the adjustment of losses sustained by the misconduct of the defendant.

The view most favorable to the plaintiff is to regard the parties as partners in the dealings contemplated by the arrangement, with all the rights and obligations incident to that relation except as varied by express stipulation. In that view it was the common case of one furnishing money or credit and the other rendering services, and dividing the

profits upon an agreed basis. The contribution of the plaintiff to the common capital was in the exercise of his skill and the giving his personal attention to the "manipulation" of the purchases and sales and doing what is usual, and might be necessary in accomplishing the speculative object intended.

The parties dealt actively in the stock of the railway company, from the making of the arrangement, on the 15th of May, 1871, until the 8th of June, when they had on hand 25,950 shares. A few shares were purchased between that time and the 7th of August, when all operations ceased as it would seem by mutual consent. From that time to about the middle of January, 1872, the market price of the stock was such that the shares that had been purchased, and which remained unsold, could not have been sold except at a loss.

By arrangement, the account of the dealings was to be kept by the brokers through whom the purchases and sales were made, under the letter "M," and was so kept until October 16th, 1871, when the shares on hand were transferred by direction of the defendant to an account headed "Consolidated Erieaccount," an account in which, by several separate entries, several accounts of dealings in the same stock in which the defendant was interested were massed, and on the 15th of November, 1871, that account was closed by the transfer of the shares represented by it to the general account of the defendant under his proper name.

It does not appear that the stock itself or the certificates thereof were disturbed, or that the brokers had not at all times the full number of shares purchased, ready to respond to any call upon them by the parties to this action, or that their stock could not be traced or readily identified.

They were not required to keep the identical certificates for the shares taken in for these parties, distinct from all other stock of the same kind. (*Horton* v. *Morgan*, 19 N. Y., 170; *Stewart* v. *Drake*, 46 id., 449.) In January there was a sudden and unanticipated rise in the market price of

the stock, and it could then be sold at a large advance upon the cost price thereof, and the accumulated interest.

The plaintiff then made a formal call upon the defendant to sell the stock and account to him for his portion of the profits. The defendant did not comply with this request, and paid no attention to it, and after waiting a reasonable time this action was brought, in which the plaintiff has recovered the difference between the cost of the stock, with the interest thereon and the market value at the time of the demand.

The recovery is upon the theory that the stock was still in the possession of the brokers by whose agency it was purchased, not having been sold, and that it was the duty of the defendant to sell upon the request of the plaintiff.

After the plaintiff had proved the transfer of the account from that captioned "M" to the "Consolidated Erie" account, and from the latter to the general account of the defendant, and given evidence of the other facts stated, the defendant by interrogatories to witnesses proposed to prove the sale and delivery of a large number of shares of Erie stock for his account in December, 1871, and January, 1872, which was objected to, unless it was shown in the first instance that they were delivered for the joint account of Marston and Gould, and the objection was sustained; and upon a repetition of a similar question and seeking to call out the same fact from another witness, the objection was renewed for the reason as alleged that the plaintiff was not affected by the sale of shares for the defendant, and that "they must be shares sold under the 'M' account in order to affect him;" the objection was sustained. Subsequently the defendant, when under examination as a witness, was asked this question: "Did you sell out the whole of the stock held upon 'M' account before the 9th of January, 1872?" It was objected to by the plaintiff, and the counsel for the defendant was asked by the referee whether "the defendant intends to show now or subsequently that the sale was made avowedly for the joint account of Marston and Gould," and

being answered in the negative, sustained the objection and excluded the evidence.

The objection to the evidence sought to be given by the answers to the first two questions put, was that it had not been shown that the shares delivered were so delivered on the joint account of Marston and Gould ; and when by the question to the defendant it was proposed to prove the sale of the whole of the stock held upon " M " account, it was excluded because not connected with proof, or offer of proof, that the sale was made avowedly—that is, accompanied by an assertion at the instant of the sale that it was made for the joint account of Marston and Gould. The exclusion was not for the want of power or right in Gould to sell the stock. That was not questioned. Neither was it because the sale offered to be proved was not the identical stock held on joint account under the title " M," or that the stock was so mingled with other stock that it could not be identified, nor was the objection taken that the sale was without notice to the plaintiff, or that the latter had not authorized a sale. . The sole ground of exclusion was that it was not connected with an offer of proof of an avowal at the time of the sale that it was made on the joint account of the parties to this action. Had the objection and exclusion been on any of the other grounds suggested, the objection might have been obviated by other evidence. The ruling was placed upon the one and very narrow ground stated, and if that was not a valid reason it cannot be sustained. Every ground of objection not specified which was capable of being obviated by evidence, was waived by the form of the objection and decision. .

It was not necessary if the defendant, as jointly interested with the plaintiff, had authority to sell the stock, and was not prohibited either by the terms of the original agreement or by some new engagement to carry the stock, which would forbid a sale without the assent of the plaintiff, to make known the fact or to avow at the time of the sale that it was made on joint account of Marston and Gould. That would

follow if it was of the joint·account stock, and that was
proper to be proved.

The sale, if made as offered to be proved, was not by the
brokers or by the defendant in satisfaction of any lien they
may have had, but by the defendant in virtue of his interest
and as owner.   He might if authorized sell in the usual way,
and if the sale was properly, fairly and honestly made, and
in the usual manner, the plaintiff was bound by it.   (*Pollen*
v. *LeRoy*, 30 N. Y., 549; *Lewis* v. *Greider*, 51 id., 231; *Case*
v. *Abeel*, 1 Paige, 393.)

The evidence should have been admitted.   Whether the
sale was authorized if made, and whether the particular
stock of the parties had been sold in good faith in the usual
way and under circumstances to bind the plaintiff, would
have been questions to be determined upon all the evidence.
It was competent to show what had become of the stock
which was the subject of the controversy, and what disposal
had been made of it, although it might not follow that the
plaintiff would be affected or bound by the sale.

For this error in the exclusion of evidence the judgment
must be reversed and a new trial granted.   We purposely
forbear to consider the important questions affecting the
ultimate rights of the parties, those relating to their relative
rights and duties in respect to the stock bought under the
arrangement and the relation they bore to each other in
respect to it, and the consequence of their acts, and especially
the action of the defendant in directing a change in the
account kept by the brokers, for the reason that in any view
a new trial must be granted for the error referred to, and
much light may be thrown upon many of the questions
involved now left in doubt by further evidence, and by more
explicit findings in respect to the relations of the parties to
each other in the transactions, whether growing out of the
terms of their agreement, or usage and custom.   Much is now
left to be spelled out or inferred which is susceptible of proof,
or which can be more satisfactorily disposed of in the first
instance by the tribunal whose province it is to pass upon facts.

I am for a reversal of the judgment upon the sole ground stated.

All concur.

Judgment reversed.