ORMOND G. SMITH *et al.*, Appellants, *v.* JOHN S. OGILVIE, Respondent.

*Supreme Court, First Department, General Term, July 9, 1889.*

1. *Contract. Relation.*—A contract between a firm of publishers and the owner of copyrights, permitting the former to publish and sell the publications for fixed royalties, does not create a fiduciary or trust, but a mere contractual, relation between the parties.

2. *Same. Fraud.*—In the absence of a fiduciary relation, it is necessary for a party, in order to justify the revocation of a settlement, to establish affirmatively that representations, which were false, were made, and were the inducing cause of making the settlement upon his part, and, if it had not been for such representations, the settlement would not have been made.

3. *Same.*—The fact that the publishers, in order to effect the settlement, made false representations as to their financial condition, is insufficient to establish actual fraud in view of the circumstance that the owner, instead of relying upon the statements, took independent advice with reference thereto, and made no complaint concerning their falsity until five years afterwards, though he knew of it within a short time after the statements were made.

Appeal from a judgment entered on a dismissal of the complaint after trial.

*Theodore H. Silkman,* for appellants.

*A. W. Gleason,* for respondent.

VAN BRUNT, P J.—This action was brought by the plaintiffs, as successors of the firm of Street & Smith, against the defendant, to set aside as fraudulent a certain settlement made between the plaintiffs and defendant in reference to royalties agreed to be paid by the defendant under an agreement with the predecessors of the plaintiff. Prior to the time of the agreement out of which the question as to royal-

ties arose, Francis S. Street and Francis S. Smith formed the copartnership of Street & Smith in publishing the New York Weekly, a newspaper. Street was also a member of the firm of J. S. Ogilvie & Co., composed of the defendant and said Street.

In the year 1880, Street & Smith and Ogilvie entered into an agreement, in writing, by which Street & Smith were to allow Ogilvie to publish and sell certain stories to be afterwards agreed upon. In consideration of the exclusive privilege of publication and sale of such stories, Ogilvie was to pay certain royalties which were to be accounted for quarterly.

Street died in April, 1883, and the plaintiff Ormond G. Smith succeeded to his interest, and subsequent to the 2d of July, 1883, the said firm of Street & Smith demanded of the defendant a statement of the stories published by him under said agreement and of the royalties due thereunder, and in compliance with such demand the defendant rendered a statement to said Street & Smith, which statement bore date the 1st of September, 1883.

It is claimed that prior to the rendition of this statement, the defendant Ogilvie made certain representations to the plaintiff Smith in regard to his pecuniary condition and the profitableness of his business, and that Mr. Street had already agreed to remit some portion of the royalty, and that certain of the publications were not, properly speaking, books, and were not therefore within the principle of the agreement, and that he had many of the books on hand which were continually being returned by the news companies.

On the 22d of September, 1883, Street & Smith and the defendant settled their accounts respecting the matters embraced within such statement, the latter paying such royalties up to July 1, 1883, and said firm of Street & Smith giving him a receipt in full, and neither the said firm or its successors made any objection until the commencement of

this action, which was in August, 1888, nearly five years thereafter.

In the fall of 1883, it was claimed by the firm of Street & Smith, that the defendant was indebted to them for royalties upon certain stories published in another series which claim was disputed by the defendant upon the ground that such publications were not books and were not included in the royalty agreement, and the plaintiff notified the defendant of his intention to bring suit, and thereupon it was agreed that he should pay $1,600, in settlement of said claims, which was done and a written instrument of settlement and release was made between the parties and delivered, and there was left remaining between said firm of Street & Smith and the defendant no unsettled matters in connection with the publication of the stories mentioned in the complaint.

Evidence was given on the part of the plaintiffs for the purpose of showing that certain representations made by defendant at the time of the settlement were false, and that the plaintiffs relied thereon, and that they are entitled to have the settlement set aside and to have the defendant account again for the royalties which they claim he owed under the agreement of publication.

The learned judge upon the whole case found that the defendant did not in bringing about the settlement in question practice any fraud or deceit or make any false representations, and therefore dismissed the complaint, and from the judgment thereupon entered this appeal is taken.

One of the main points upon which the plaintiffs seem to rely is that the firm of Street & Smith and the defendant occupied fiduciary relations towards each other and that notwithstanding the settlement which had been made, the burden of proof rests upon the defendant when called upon by the plaintiffs to show that such settlement was just and fair, and that there is a presumption arising in

consequence of these fiduciary relations against the integrity of the settlement.

We fail, however, to see anything going to show any fiduciary relations existing between the plaintiff and the defendant. The parties were dealing in respect to their own business. The one owed no duty to the other. They had a right to make such contracts as they saw fit, and in the settlement of their rights it does not appear that they occupied any different relation from that which ordinary contracting parties do. We think the learned counsel has not appreciated the distinction between two classes of fraud which are governed by quite different rules, namely those in which from the relations of the parties fraud is presumed and the burden of proof is thrown upon the one benefited to overcome such presumption, and those in which the voidable character is inferred as a conclusion of fact from the facts proved without any presumption from the partial incapacity of one party or the overmastering influence exerted by the other.

In the case at bar, from the mere fact of entering into this royalty agreement, no fiduciary relations were established between the parties, and this is shown by the fact that no action but an action at law could be maintained for the recovery of the royalties in question.

It is true that the counsel for the appellant states that Street & Smith had a right to go into a court of equity, and ask the defendant for an accounting under the royalty agreement, and cited three cases to support this proposition, viz.: Marston *v.* Gould (69 N. Y. 220) ; Marvin *v.* Brooks (94 N. Y. 71), and Ensign *v.* Nelson (49 Hun, 215 ; 17 N. Y. State Rep. 66). But in the Case of Marston *v.* Gould, the contract was a joint adventure, and the parties were partners in the adventure. In Marvin *v.* Brooks, the principal had entrusted his agent with money ; in other words made him his trustee, and called upon him to account, and in Ensign *v.* Nelson, the court held that the parties

were either partners or jointly interested in the adventure, none of the cases holding that an action in equity might be maintained to recover royalties. In fact, no such action can be maintained, any more than an agent or salesman may maintain an action in equity against his employer for an accounting for his commissions or sales. There is no room for equitable intervention in such a case, because no trust relation exists, and simply an action at law can be maintained.

The learned counsel for the appellant has failed to call our attention to any authorities except those above mentioned to support his proposition, and we presume he has not done so because none better than those cited can be found.

There being therefore no fiduciary relation between the parties, it became necessary for the plaintiffs to prove affirmatively that they had been defrauded in making the settlement in question. They offered evidence to establish this proposition, which evidence was answered by the defendant.

Without going into a lengthy discussion as to the credibility of witnesses and the nature of the testimony, it seems to be sufficient to say that, upon an examination of the testimony, no ground appears for interfering with the conclusion of the learned referee. It is true, perhaps, that if he had come to the contrary conclusion after having heard the testimony, and having weighed the same, aided as he was by hearing the witnesses orally testify, such conclusion might be sustained. But it seems to us, in view of all the circumstances of the case, and of the fact of the plaintiffs taking independent advice in regard to some of the features of this settlement, that these parties were acting at arms length, and that the plaintiffs did not trust to any representations which the defendant made in the course of the settlement, but relied on the advice which they got seelwhere. Such being the condition of the case even if

the defendant made representations which were not true, it would not be sufficient to upset the settlement. In order to justify the revocation of this settlement, it is necessary for the plaintiffs to establish to the satisfaction of the court that representations were made which were false, and which were the inducing cause of making the settlement upon the part of the plaintiff, and that had it not been for such representations, such settlement would not have been made.

It seems to us that there is a conspicuous absence of evidence in relation to this point in the case.

It is true that Ormond G. Smith testified that he relied upon these representations; but it also appears that in respect to some matters connected with this settlement, and in respect to some of the representations made, he took independent advice, and because of that advice he insisted upon a claim which Ogilvie resisted, and finally paid $1,600 to settle.

It does not appear that there was that reliance upon any representations that Ogilvie may have made which it is necessary to establish to set aside a settlement made five years before, as to which no complaint was made.

The statements of the defendant in respect to his condition do not seem to be particularly material, and it does not appear that any reliance was placed thereon, because these plaintiffs knew, within a short period of time after this statement was made, all that they now know in respect of its falsity, and yet never made any complaint upon this ground until this action was commenced five years afterwards. We think, therefore, that unless the plaintiffs can rely upon the existence of fiduciary relations between the defendant and the plaintiffs, and thereby throw the burden of proof upon the defendant, that there is no reason to disturb the conclusion at which the learned judge arrived.

We do not think that this rule can apply, as their relations were simply contractual, no trust arising, and no special or greater confidence was placed in the defendant by

the plaintiffs than is placed by every licensor of a patent in his licensee.

Numerous exceptions were taken with respect to the admission and rejection of evidence and refusals to find ; but none of them are of such a character as would call for a new trial, because they have in no respect been detrimental to the plaintiffs.

A very large portion of the requests to find are mere requests to find evidence, and, if for no other reason, might have been safely refused on that ground.

Upon the whole case, therefore, we are of opinion that the judgment should be affirmed, with costs.

DANIELS and BRADY, JJ., concur.