(80 Misc. Rep. 348.)

### WEINSTEIN v. WELDEN.

(Supreme Court, Special Term, New York County. April, 1913.)

1. PARTNERSHIP (§ 20*)—AGREEMENT—BINDING EFFECT.

> A written partnership agreement is not more binding than an oral one.
>
> [Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 6, 7; Dec. Dig. § 20.*]

2. PARTNERSHIP (§ 20*)—CONTRACTS—STIPULATION FOR FORMATION OF CORPORATION—WAIVER.

> Where two persons jointly engaged in the manufacture of dental supplies entered into an agreement reciting that their joint enterprise should be carried on under a corporation to be formed, and provided that neither party should reveal their trade secrets or for a period of 17 years engage in any business which would compete with the manufacture of their patented article, failure to form the corporation did not render the remainder of the contract unenforceable where they continued for a time to carry on the business as a partnership.
>
> [Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 6, 7; Dec. Dig. § 20.*]

3. PARTNERSHIP (§ 277*)—CONTRACTS—RIGHT TO ABROGATE—DISSOLUTION OF PARTNERSHIP.

> Where two persons jointly engaged in the manufacture of dental supplies entered into a contract providing that neither should reveal any trade secrets or engage in any competing business, and where they continued thereafter to carry on the business as a partnership, one party could not by giving notice of termination of the partnership relieve himself from the obligations imposed by the remaining part of the contract.
>
> [Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 622, 624; Dec. Dig. § 277.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. PARTNERSHIP (§ 96*)—PROPERTY—FRAUDULENT SALE.

    Where one partner, in fraud of his copartner, induces a creditor to secure judgment against the firm and procure a receivership sale of the partnership assets, and such partner buys in same at the sale, he holds the assets for the benefit of the firm.

    [Ed. Note.—For other cases, see Partnership, Cent. Dig. § 144; Dec. Dig. § 96.*]

Action by Louis J. Weinstein against F. Stanwood Welden. Judgment for plaintiff.

B. Edelhertz, of New York City, for plaintiff.
A. S. Bacon, of New York City, for defendant.

PENDLETON, J. This is an action in the nature of a bill for specific performance, wherein plaintiff seeks an injunction against the violation of the provisions of an agreement in writing, dated September 18, 1911, entered into by and between the parties hereto. The agreement, after reciting that the parties "are engaged in a joint enterprise concerning the sale of dental supplies, under a corporation to be formed, to be called the Welden Dental Specialty Company," and that "in the prosecution of such joint enterprise" (that is apparently the joint enterprise they are engaged in) "it becomes necessary for each to intrust to the other certain trade secrets which are designed should never be revealed to any person whatsoever without the consent of both parties hereto in writing," provides in the contracting clause as follows:

"(1) It is mutually agreed that neither party will reveal to any person whatsoever any secret or trade secret communicated to him in connection with the business of the Welden Dental Specialty Co."

And then provides:

"This agreement applies * * * more especially to the composition and method of manufacture of 'casting porcelain,' experiments concerning which have been made by both parties hereto. (2) Neither party hereto shall for a period of 17 years from this date enter into any business which shall either directly or indirectly interfere with or compete with the business of the Welden Dental Specialty Co., and especially in the manufacture or sale of 'casting porcelain.' (3) If either party shall violate this agreement and either directly or indirectly reveal any trade secret or sell any product manufactured and sold by the Welden Dental Specialty Co. without the consent of the other, then this agreement shall bind for the full period of 17 years the party so violating this agreement, and the innocent party shall thereby be permitted to continue the said business, and the innocent party shall be entitled to apply forthwith to any court of record for an injunction and damages for the breach of this contract."

It appears from the evidence that some considerable time prior to the date of the agreement the defendant had conceived the idea of using porcelain for castings in teeth and experimented for the purpose of discovering the formula or method of making a porcelain suitable for the purpose; and had applied for or taken out a patent covering some branches of the subject; that several months prior to the agreement plaintiff and defendant had come to some agreement or understanding in regard to jointly exploiting casting porcelain

commercially. An office had been taken and the name of the Welden Dental Specialty Company put on the door, and stationery with that name was used as early as the early part of July. The agreement or understanding contemplated apparently that a corporation would be formed as the vehicle for doing the business. Difficulty was found in making just the right kind of porcelain, and it was apparently realized that the process required or might be benefited by improvement, and both parties gave considerable time to experimenting for this purpose, plaintiff at Columbia University and defendant first at a practical manufacturing plant in Providence and later for a short time in connection with plaintiff and Dr. Lamme of Columbia University, who was engaged and paid by plaintiff to work with them. In this condition of affairs it was apparently felt by the parties that there should be some formal written agreement entered into for their mutual protection, and the agreement in question was made. No corporation was ever formed, but the parties continued to act together in furtherance of the enterprise, and carried on a considerable business in the advertisement and sale of the casting porcelain until March, 1912, doing the business under the name of the Welden Dental Specialty Company. During this time plaintiff attended more particularly to the purely business side and defendant to manufacturing, experimenting, and making demonstrations; in other words, the experimental or scientific side of the enterprise. It is plain from the evidence that they were during all this period experiencing more or less difficulty in manufacturing an article entirely satisfactory, and were consulting as to experiments to find out what the trouble was. Defendant's letters of August and October show this, if there were no other evidence on the subject. There is also some evidence that the failure to form a corporation was due to the inability to sell stock in view of the uncertainty of the success of the enterprise.

It is alleged in the complaint that, instead of forming a corporation to be called the Welden Dental Specialty Company, the parties formed a copartnership under that name, and as such carried on the business. To substitute by agreement a copartnership for a corporation was clearly within the competency of the parties, and that they did so, at least for the time being, is amply borne out by the evidence. On October 12th, having been apparently advised that the law required that a certificate should be filed if they were to do business under that name without being incorporated, they executed and filed a certificate in which they stated they were about to conduct or transact business under the name of the Welden Dental Specialty Company; "that the name under which such business is to be conducted or transacted is the Welden Dental Specialty Company, and that the true, real full names of the persons so to conduct or transact the same;" then followed the names of the parties to this suit. On October 19, 1911, they signed a contract with one Weeden, which began as follows:

"A contract is herewith entered into between F. S. Welden and L. J. Weinstein, owners of the Welden Dental Specialty Company, parties of the first part, and Charles H. Weeden, party of the second part, pertaining to the sale and manufacture of the product known as Welden's casting porcelain. The parties of the first part are owners of the patents and formula for the

manufacture of the above mentioned product, and herewith agree that Charles H. Weeden, party of the second part, should manufacture during the time of the life of the patents for the Welden Company any and all casting porcelain that they may be able to sell."

Then followed provisions that the party of the second part should use his best efforts to produce the best possible material; that any alteration in the original formula that he might make should become the property of the Welden Company; and that he should manufacture the product for the Welden Company exclusively, and for no one else. "The Welden Company, in turn, absolutely agrees to sell only casting porcelain manufactured for them by Charles H. Weeden." The contract entitled each to examine the books of the other and contained other provisions not necessary to specify at this time. Some time in November, 1911, formal written articles of copartnership were prepared, but never signed. In the draft the time for the duration of the copartnership is left blank. On December 4, 1911, a written contract or release was signed by both parties, which began as follows:

"I, Dr. Stanwood Welden, and I, Louis Weinstein, doing business under the name of the Welden Dental Specialty Company, do hereby relinquish all right, title and claim to the following accounts."

Here several accounts are named, and then comes the following:

"The goods on the above-mentioned accounts are billed by the Welden Dental Specialty Company and checks are payable to said concern or parties doing business under said name."

The checks used in the business introduced in evidence were signed in the name of the Welden Dental Specialty Company by F. Stanwood Welden and Louis J. Weinstein. They are not designated as officers, as would be the case if it had been a corporation. These facts, taken in connection with the evidence as to the method of carrying on the business, establish clearly that the defendant waived the formation of a corporation, and that the parties intended to carry on the business under the name specified in the agreement of September 18, 1911, but as a copartnership, instead of a corporation, at least for the time being. They may very probably have contemplated later on possibly reverting to the corporation plan, but as a condition precedent to the agreement of September 18th becoming effective it was waived or abandoned. It is difficult to see what else they could have intended when they executed and filed a certificate saying that they intended to do business under the name of the Welden Dental Specialty Company. That was a distinct change from the corporation plan and the substitution of another, and they followed it up by the agreement of October 19th, wherein they contracted for the manufacture of this porcelain during *the time of the life of the patents,* which the agreement recites they own, referring evidently to Welden's patent. They refer to themselves as *Welden Company,* and provide that all improvements shall be the property of the Welden Company. The terms of this agreement show beyond doubt that the parties contemplated that the arrangement was to extend over a long period and had in mind exactly the business referred to in the agreement of September 18, 1911. Again, in the agreement or release of December 4th, the lan-

guage used distinctly indicates that they are doing the business referred to in the September agreement, and under the name of the Welden Dental Specialty Company; the only difference being that it is not a corporation. The form of the checks used, and the fact that for months they carried on this business under that name, all tend but in one direction, viz., to show that the parties were in agreement to carry it on in that way.

[1] At one time articles of copartnership were drawn, but not executed, but they continued to jointly carry on business under the name specified as before. Why they were not signed is not clear. Each party says the other did not have the money, but plaintiff, according to the account filed by him, advanced after November 1, 1911, more than the sum required, and defendant claims he had borrowed enough on his house. The probability is that they were much interested in making a success of the enterprise, and as they were actually doing the business under the certificate they had filed and had the essential protection in the agreement of September 18th, it did not seem very important to either of them to sign these written articles. Neither party, so far as appears, ever thought enough of it to request or demand that they be signed, and neither, so far as appears, ever refused to sign or made any point of the matter either one way or the other. A written partnership agreement is not more binding than an oral one. In March defendant sent plaintiff a notice in writing terminating what he claimed was a certain indefinite partnership between them, taking the position that as no definite time had been fixed it was at most a partnership at will, terminable by either party. Some exchange of letters followed; and, defendant insisting on his right to sell casting porcelain and carry on the business without regard to plaintiff, this action was begun and a temporary injunction was asked for and granted pendente lite. It is apparent that during all the time the parties were carrying on the business some difficulty with the porcelain was experienced, which the defendant and Weeden more especially were trying in the manufacture to overcome; and the evidence indicates that shortly before the sending to plaintiff of the notice purporting to dissolve the partnership defendant and Weeden had, or thought they had, discovered an improved method of treatment, the result of which was to produce a perfected product; that the fact of such discovery was purposely kept from plaintiff at defendant's suggestion; and it is practically not denied that it was defendant's intention and object in separating from plaintiff to carry on the business himself, and probably with Weeden, and exclude plaintiff entirely from any benefit or interest therein.

[2] That the parties contemplated and intended when the agreement of September 18, 1911, was executed that the Welden Dental Specialty Company should be a corporation may be conceded. The provision as to the corporation is only, however, in the recital, and is not part of the contracting clauses of the contract. The principal or essential element and purpose of the agreement was that neither party should reveal the secrets of or compete with the business of the joint enterprise in which they were engaged. Its covenants not to compete,

etc., in view of the objects of the contract, naturally related to the business of the joint enterprise—that is, "especially the manufacture and sale of casting porcelain," and not to the particular corporation—and this must be borne in mind in construing its provisions. Even if it be assumed that the formation of a corporation was a condition precedent, and that on failure to form the contemplated corporation within a reasonable time defendant might have withdrawn, it was clearly within the power of the parties to waive the performance of a condition precedent or change that part of the plan as to using a corporation and to carry on the business by a partnership. Conditions precedent may be waived by any one or all of the parties. Federal Sanitary Cleaning & R. Co. v. Loeb, 147 App. Div. 740, 132 N. Y. Supp. 65.

[3] And, if they did, the provisions of the agreement of September 18, 1911, would apply, and bind the parties as to the business intended to be carried on just as fully as if the original plan of a corporation had never been changed. In such case the agreement, having become effective, could not be abrogated by one party. It was not limited by the duration of the partnership, but by the time fixed in the agreement itself. There was no provision in the agreement as to the time for the duration of the corporation. Its authorized existence might have been short or long. So as to the partnership, if it be conceded that it was at will and therefore terminable by notice, that might let the party giving the notice retire, but it did not allow him to escape the obligations of the agreement of September 18th.

The situation is not dissimilar to that in Federal Sanitary Cleaning & R. Co. v. Loeb, 147 App. Div. 737, 132 N. Y. Supp. 65. There, although the facts and circumstances were different, the principle was the same. The defendant in that case, having waived the securing of the basic patent and elected to go on notwithstanding, and accepted some benefits, was held estopped to refuse to complete. Here defendant, being in a position in which we will say he might have refused to go on, elected to waive the formation of a corporation, and signed a certificate creating the Welden Dental Specialty Company as a partnership or joint business, and went on under that arrangement. He thereby elected to go on, and plaintiff having relied thereon, and expending time, energy, and money in the prosecution of the enterprise, defendant could not thereafter at a later time rescind or disavow his election and seek to avail himself of the failure to form a corporation. He cannot now, having perfected the inventions or discovery, in order to deprive plaintiff of the fruits of success, set up a failure he had previously elected to waive. As was said in the case last cited, he cannot now be heard to question what he then acquiesced in.

It is urged on defendant's behalf that as there is no corporation called the Welden Dental Specialty Company, and any partnership under that name has been dissolved, there is nothing which defendant can be enjoined from competing with. The contract admits of no such narrow construction. It would defeat its very purpose. It was plainly intended to prevent either party from competing with the business intended to be established and carried on, especially the manu-

facture and sale of "casting porcelain," and, if either party violated the contract, to allow the innocent party to continue the said business, the guilty party being enjoined from entering into competition therewith during the time fixed in the contract.

[4] Defendant claims, however, that admitting plaintiff's rights under the agreement of September 18, 1911, these were wiped out and acquired by him by virtue of certain proceedings instituted in the name of Weeden, resulting in a judgment, receivership, and sale of plaintiff's interest and its transfer to defendant. The whole proceeding was apparently a clumsy conspiracy on defendant's behalf to procure suit to be brought in order to acquire for nothing, under the form of law, plaintiff's interest and thereby defeat any claim on his part in this suit. To ask any one on the evidence presented to believe that it was only a bona fide effort to collect a debt for Weeden is an insult to human intelligence. The law is well settled that partners or persons jointly interested stand in the relation of trust and confidence, and neither can through chicanery or device secure any advantage over the others or acquire for his individual interest the joint property or any interest therein; and, if he attempts so to do, equity will impress it with a trust for all. It is urged here that the partnership had terminated, but the parties were still jointly interested in the assets and jointly liable for the debts. As to partnership assets the partnership continues, but whether technically still partners or not, being joint owners of the assets, the same rule applies. Marston v. Gould, 69 N. Y. 225. Any interests acquired by defendant Welden by the transfer to him will be considered in a court of equity as acquired for the mutual benefit of himself and plaintiff, and any expenditures by him will be properly allowed in any accounting between himself and plaintiff as to partnership matters hereafter had. Booth v. Farmers' & Mechanics' Bank, 74 N. Y. 232. The authorities cited by defendant have no application, and are not in conflict with the views here taken.

Judgment accordingly.