### JOHNSTON v. BROWN et al.

(Circuit Court of Appeals, Second· Circuit.
March 9, 1925.)

No. 256.

**1. Account ⬤—16—Equitable owner of undefined share of joint fund held entitled to accounting in equity.**

A voluntary committee, with power to increase its membership and fill vacancies, was formed to act for such holders of Virginia deferred certificates of debt, which constituted a claim against the state of West Virginia, as should deposit their certificates with the committee. In the event payment or settlement was secured, they were to be subject to assessment, not exceeding a certain per cent., to pay expenses and compensation to the committee. No rules were made as to distribution of any fund so earned. *Held*, that the members of the committee were joint owners of such fund, each of an undefined, but equitable, share after payment of expenses and charges, which, in the absence of a universal agreement and on insistence of any one member, could be determined only by an accounting in equity, suit for which is maintainable only against members of the committee, and a firm which acted as depository and advanced the money for expenses, but was not a member of the committee, is not a proper party defendant, but its account must be stated as a creditor of the fund.

**2. Equity ⬤—17—Part owner of joint fund held entitled to have distribution made by court of equity.**

A division of a joint fund between owners of undefined interests therein may not be made by a majority over the objection of any one owner, who is entitled to invoke the jurisdiction of a court of equity to make the division.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Bartlett S. Johnston against James Brown and others. From a decree dismissing the bill, complainant appeals. Reversed, with directions.

For opinion below, see 300 F. 737.

The prayer of the bill is for an accounting, to the end that upon the coming in of a master's report such of the defendants as are members of the firm of Brown Bros. & Co. may be directed to pay to the complainant and others such sums as may on said accounting be found to be due from the members of said partnership. This litigation is the latest chapter of a history beginning with the issuance of what were known as "Virginia deferred certificates," representing that portion of the public debt of the state of Virginia which in the opinion of the authorities of that state should be assumed and paid by the state of West Virginia. By 1898 there had been issued and were outstanding several millions par value of these certificates, and no effective or even promising method had been devised for getting anything on these certificates from either Virginia or West Virginia.

In that year several men, all now deceased, formed a committee to act on behalf of the holders of such of the above certificates as might be. deposited with them, for the purpose of devising and pushing some plan for their collection or translation into securities of value. The declared purpose of the committee was to procure deposits of these certificates with themselves, to formulate a plan of settlement and submit the same to depositing creditors for their acceptance, and to

act as agent of such depositing creditors in carrying out the purpose of such agreement. The committee reserved power to increase its number and to fill vacancies by coöptation.

The intention 'of the original members of the committee was evidently to try for a settlement by compromise with the state of West Virginia. All such endeavors failed, and the committee as constituted from time to time stood behind and paid the expenses of the litigation entitled Virginia v. West Virginia, the history of which is written in 206 U. S. 290, 27 S. Ct. ·732, 51 L. Ed. 1068; 209 U. S. 514, 28 S. Ct. 614, 52 L. Ed. 914; 220 U. S. 1, 31 S. Ct. 330, 55 L. Ed. 353; 222 U. S. 17, 32 S. Ct. 4, 56 L. Ed. 71; 231 U. S. 89, 34 S. Ct. 29, 58 L. Ed. 135; 234 U. S. 117, 34 S. Ct. 889, 58 L. Ed. 1243; 238 U. S. 202, 35 S. Ct. 795, 59 L. Ed. 1272; 241 U. S. 521, 36 S. Ct. 719, 60 L. Ed. 1147; and 246 U. S. 565, 38 S. Ct. 400, ·62 L. Ed. 883.

For the purpose of carrying on this litigation Virginia had established by law a body known as the Virginia Debt Commission, which, however, for purposes of litigation, was upheld and financed by this committee, which obtained the funds for this suit from Brown Bros. & Co., which was technically the depository of the committee, and which issued negotiable certificates for the Virginia bonds deposited with it. When the Virginia Debt Commission finally received from West Virginia the cash and securities which satisfied the decree of the Supreme Court in the above suit, it brought a proceeding in equity in the courts of the state of Virginia to distribute the fund.

By decree in this suit, entered on or about July 22, 1920, Brown Bros. & Co. were paid the advances it had made to the Debt Commission for the expenses of the suit, and further paid to that banking firm such proportion of the recovery from West Virginia as the deposited deferred debt certificates of Virginia entitled the depository of the committee to receive. Thereupon, in pursuance of the deposit plan and the original scheme of the committee, an assessment of 5 per cent. was levied upon the face value of the deposited certificates, producing a fund in cash and securities of $718,042.13, and it is over the disposition of this fund that the present litigation arises.

It was the lawful property of the committee, and out of it they were admittedly called upon to pay such expenses as they had incurred, and to make proper distribution of what might remain over and above such expenses. A meeting of the committee members was called in the city of New York for September 8, 1920, and at that meeting the question of distributing the fund received under the decree of the Virginia court was taken up. The then members of the committee were Messrs. T. N. Brown and Delano, who were also members of the firm of Brown Bros.; Messrs. Le Gendre, Carey, and Baker, who were not partners, but, like Messrs. Brown and Delano, were residents of New York; Mr. Chew, of West Virginia; and the complainant, who resided in Maryland. All these committee members are parties to this suit except Mr. Chew, who died before subpœna issued. The other defendants are members of the firm of Brown Bros., but not members of the committee.

At the meeting in New York above referred to a scheme of distribution of the funds belonging to the committee was submitted and passed upon favorably by at least a majority of the committee. By that scheme more than four-sevenths of the fund was paid to Brown Bros. for advances or expenses and fees for acting as depository. The balance was divided between the committee members and the secretary of the committee. We are satisfied that this plaintiff never agreed to or acquiesced in the distribution of the fund in the committee's hands, nor is there any finding made by the court below to the effect that he did. The lower court, however, rejected his demand for an accounting and dismissed the bill, and from this decree the present appeal was taken.

Earl B. Barnes, of New York City, for appellant Johnston.

Harrison, Elliott & Byrd, of New York City (Robert L. Harrison and William Byrd, both of New York City, of counsel), for such of the appellees as are members of the firm of Brown Bros.

Sandford Robinson, of New York City, for remaining appellees.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge. There are but two questions of law raised by this appeal. First, is the appellant entitled to any accounting? Second, from whom is he entitled to an account?

It is asserted that the underlying reason for an accounting herein is that defendants, or such of them as were members of the committee, were joint adventurers or quasi partners in a commercial or at least money-earning enterprise. The relation of committee

members to each other is said to be like that commented upon in such cases as Marston v. Gould, 69 N. Y. 220, and Joring v. Harriss (C. C. A.) 292 F. 974.

[1] We are not concerned with such definition; it is enough for our purposes that an unincorporated, self-created, and self-perpetuating body of gentlemen became lawfully possessed of a large amount of property belonging to them jointly, against which there were unquestioned, but unliquidated or unfixed, claims for expenses and services, and concerning the distribution of which the rules, records, and history of the committee itself gave no binding instructions. It was impossible to say that any member of the committee had qua such member any legal right to any definite or positively measurable portion of their joint property, but he was, equitably entitled to some share in whatever might be left after the payment of expenses and charges jointly incurred, but not fixed in amount by any rule or agreement of the committee. Such a situation presented difficulties that nothing but the plastic remedies of equity or the healing power of universal consent could overcome or adjust.

[2] As above noted, we are satisfied that there was no universal consent, and the situation presented at the meeting of September, 1920, was not one that could be overcome by a majority vote. One of a number of joint owners can prevent, if he wishes, a departure from the general rule that equality is equity, and the ground for that prevention may be either an objection to the allowance of demands against the joint owners as a whole, or the assertion of an equity showing the objector entitled to either more or less than an equal share.

Equally is it clear to us that the persons from whom the plaintiff is entitled to an accounting do not include those members of the firm of Brown Bros. who were not also members of the committee. The partnership entity of Brown Bros. was never a member of the committee. It is doubtless true that some, if not most, of the results achieved by and for the committee resulted from work done by members of Brown Bros. who did not belong to the committee, who identified themselves with the committee's projects because their firm reasonably expected to profit from the committee's success. Yet, with all this admitted, it remains true that the firm was but a servant, however important, an agent, however trusted, and a depository, however indispensable. In all these capacities it was entitled to compensation for services and to repayment of proper advances.

But such compensation had to come from the committee acting jointly, and each committee member acting severally was entitled individually to object to any item of charge or compensation. The committee's rules or form of organization gave no special right to a majority.

We are therefore of opinion that complainant is entitled to have an account stated by or on behalf of the surviving members of the committee of 1920, in which account the demands of the firm of Brown Bros., for charges, or compensation for services, must be stated. But neither the plaintiff nor the other committee members are jointly interested with the firm of Brown Bros. in anything. That firm is doubtless a creditor, which does not require it to be joined as an accounting party.

The bill was dismissed below in part upon the ground that the committee, in making the distribution complained of, acted in good faith. We see no reason to doubt this finding, but deem it immaterial. The point is not whether they did what they thought was right, but whether they could impose their will upon a dissenting joint owner. They did not constitute a corporation, and their terms of association contained no arrangement whatever regarding the method of distributing the joint property at the end of their labors. It must be done equitably, and no machinery was provided for ascertaining what was equitable, except that furnished by the existence of courts of equity.

It is urged as a reason for an accounting that the charge account of Brown Bros. contains a method of computing interest which is substantially usurious. We express no opinion on that point. It is agreed that this banking firm has a just demand for charges and expenses, but that the propriety of items, or the statement of them, is a matter for investigation by a master. Neither do we express any opinion as to what is, when all the circumstances are shown, an equitable system of distribution. The nature of the committee organization was such that all that can be now said is that the results reached by the committee itself *may* meet the requirements of equity, but what we now hold is that the method of reaching those results is not in accordance with that law which equity follows.

It is ordered that the decree below be reversed, and that the defendants who were also members of the committee state an account before a master, to which account complainant may file exceptions. It is further ordered that appellant recover the costs of

this appeal. The master to be appointed by the order on our mandate shall be Hon. Wallace Macfarlane.