O'HARA v. HARMAN et al.

(Supreme Court, Appellate Division, First Department.  February 5, 1897.)

JOINT ADVENTURE—WHAT CONSTITUTES.

    A contract indefinite in terms, but stating that the parties thereto had made application for letters patent on watch cases, and had agreed to make, use, or otherwise dispose of said patents and any other patents that they might obtain, and to divide royalties and profits received by them, respectively, for a term of years, is a joint adventure.

Appeal from special term, New York county.

Action by Daniel O'Hara against C. Wesley Harman and others for an accounting. The complaint was dismissed, and plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTER-SON, O'BRIEN, and INGRAHAM, JJ.

James L. Bishop, for appellant.

Edmund Wetmore and David J. Newland, for respondents.

WILLIAMS, J. The action was brought for an accounting under an agreement which is as follows:

"Whereas, Daniel O'Hara, of Waltham, Massachusetts, and Horace G. Skidmore and C. Wesley Harman, both of Cincinnati, Ohio, have this day made mutual transfers of certain improvements in watch cases, &c., for which they have made applications for letters patent of the United States; and whereas, the said parties have agreed to make, sell, and use, and otherwise dispose of, said patents and patented improvements (and all improvements in watches, watch cases, and watch attachments that any one or more of them may hereafter make or become possessor of) for the joint, equal, and mutual benefit of said contracting parties: Now, therefore, they, the said Daniel O'Hara, Horace G. Skidmore, and C. Wesley Harman, agree and bind themselves and legal representatives that all business hereunder shall be in accordance with their joint consent, and for their equal benefit and profit; and should either member at any time contemplate disposal of his interest, or any part of it, he shall first give the others the opportunity of purchase or refusal.

"Witness our hands, this 28th day of December, 1883.

                           "Daniel O'Hara.
                           "Horace G. Skidmore.
                           "C. Wesley Harman."

The complaint set out this agreement, and alleged that, in accordance with the stipulations thereof, he (the plaintiff) had accounted to the defendants for all moneys, royalties, and profits which he had derived from his improvements and patents, and had paid over to the defendants the part they were entitled to, and had in all respects performed the agreement on his part; but that the defendant Harman, though he derived money, royalties, and profits from his improvements and patents since January 1, 1892, to which the plaintiff was entitled to the one-third part, he refused on demand to account therefor or to pay over to the plaintiff the part to which he was entitled; and prayed for an accounting, a determination of the rights of the parties, and judgment for the amount found due to him from such defendant. This defendant, in his answer, admitted the making of the agreement and his refusal to account, and denied the other allegations in the complaint. He also alleged

breach of the agreement on the part of the plaintiff, and that he fully complied with the terms of the agreement on his own part until it had been broken off by the plaintiff.

It appeared by the evidence given on the trial that the parties to this agreement, at the time the agreement was made, were the owners and patentees of certain improvements in watches and watch cases, which were the subject-matter of the agreement, and that, having entered into the agreement in December, 1883, the parties acted under it until January, 1892, dividing between them the moneys, royalties, and profits derived from these patents and improvements; that among these patents and improvements was one known as the "Screw Case Patent," issued to the defendants, and that licenses and agreements were made by the defendants to and with a company known as the "Fahys Watch-Case Company," a New York corporation,—one dated April 8, 1884, and the other October 21, 1886; that, under these agreements, moneys, royalties, and profits were paid by this company to the defendants down to January 1, 1892, and were divided between the defendants and the plaintiff under their agreement of December 28, 1883. The watch-case company refused to pay the royalties for the year 1891, which were payable January 1, 1892, and have never paid to the defendant Harman his one-half of such royalties for that or any subsequent year; that defendant Skidmore brought actions against the watch-case company to recover his one-half of the royalties, making the defendant Harman a party defendant, and in those actions recovered his one-half of the royalties for the years 1891 and 1892, and received the same, to the amount of many thousand dollars; that the other one-half of such royalties, which it is alleged the defendant Harman was entitled to, he did not receive because, September 16, 1892, he released the same to the watch-case company; that this release covered the royalties then due and those to accrue thereafter under the two agreements, and at the time this release was executed there was a considerable amount alleged to be due under the agreements. It was claimed that the execution of the release defeated the right of these defendants to recover from the watch-case company many thousand dollars of royalties, of which the plaintiff was entitled to a one-third part, under the agreement of December 28, 1883. The defendant Harman was in the employ of Joseph Fahys & Co., the members of which firm were managers, officers, directors, or stockholders of the watch-case company. His salary in 1891 was $3,700, in 1892 $4,000, in 1894 $5,000, and in 1895 $5,000 and commissions on sales at the rate of three-tenths of 1 per centum of the total output; such commissions amounting to $5,000, and thus making his salary for that year $10,000. The release recited a consideration of $1 and other valuable consideration received by him, and Harman testified that Skidmore had brought suits under the agreements, in which he (Harman) refused to join, being in the employ of Fahys & Co., and, being advised by his counsel, who was the counsel for Fahys & Co., that the watch-case company was not liable for royalties under the contracts, and believing such advice, he executed the release. No evidence was given on

the part of the defendant Harman.     The court rendered its deci-
sion, wherein it was found, among other things, as matter of fact,
that defendant Harman had not received or become entitled to any
moneys, royalties, or profits since January 1, 1892, for which he
was bound to account to the plaintiff under the agreement in suit;
and, as conclusion of law, that no partnership or partnership rela-
tion was created under the agreement, or anything done under it by
the parties; and plaintiff's complaint was dismissed on the merits.
The plaintiff excepted to this decision.

It will be seen that the facts are undisputed, and that two ques-
tions arise upon this appeal:     (1) Whether the agreement of Decem-
ber 28, 1883, gave the plaintiff the rights claimed by him, and, if so,
(2) whether an action in equity is the proper remedy to secure such
rights.     The agreement is not full or definite in its terms, but the
parties, having made it, acted under its provisions as they all under-
stood them, and without any disagreement, and divided the moneys,
royalties, and profits received by them, respectively, for eight years.
They thus gave a practical construction to its provisions, which the
court should not disregard, and which the defendant Harman, having
so long profited by, should not be permitted to disavow. Even if the
agreement did not technically create a co-partnership or constitute
the parties co-partners, it was, at least, a joint adventure entered
into for the mutual profit of all the parties, and the relations be-
tween them were of the same confidential and fiduciary charac-
ter as those existing between co-partners.     Though the provi-
sions of the agreement were not specific and certain as to the details,
by fair implication, in view of what the parties did under the
agreement, we must assume that they were to deal with their
respective patents and improvements, and to acquire such mon-
eys, royalties, and profits as they were fairly able to, in the exer-
cise of their best judgment, and to divide with each other the
profits thus secured.     They were to act in good faith, and to deal
honestly and fairly with each other, and to account for the profits
actually received.     Beyond this their liability did not extend, un-
less they were guilty of breach of trust and misconduct in their
fiduciary relations with each other; but it cannot be said that they
might with impunity cheat and defraud each other, and, if they
attempted to do so, we are unable to see why they might not be held
liable for the damages resulting from such breach of trust and mis-
conduct.

It appears here beyond doubt that the watch-case company, under
its agreements, with the defendants, was liable for large royalties
for the years 1891, 1892, and the following years.     The watch com-
pany had paid these royalties from 1884 and 1886, down to 1891
and 1892, without objection; and, if the defendant Harman had
acted fairly and honestly with his associates, the watch-case com-
pany would have been obliged to continue paying such royalties.
The defendant Harman, in making the release, in September, 1892,
enabled the watch-case company to avoid the further payment of
such royalties, and he made the release, not because he was under
any obligations to do so, but because he was in the employ, at a

large salary, of those persons who were interested in and conducted the watch-case company, and desired to grant them a favor. So far as his own interest in the matter was concerned, he might grant such a favor to the company; but, when he interfered with the rights of his associates to their great disadvantage, he was guilty of a breach of his trust relation with them, and of misconduct in his fiduciary capacity, and became liable to them, under their agreement, for whatever damages they suffered, and to account to them for such damages. There seems to be no doubt but that the agreement of December 28, 1883, gave the plaintiff the rights which he claimed in this case. That this action was the proper remedy to secure such rights cannot be doubted. Even if the relations between the parties were not those of a technical co-partnership, but a joint adventure, the agreement is still to be enforced, and the rights and liabilities of the parties determined, upon the same principles as are applied by courts of equity in partnership transactions.

In Marston v. Gould, 69 N. Y. 220, which grew out of a joint adventure in the purchase and sale of stocks, Judge Allen stated the rule in reference to the jurisdiction of courts of equity as follows:

"Whether the property in the shares purchased was in the plaintiff and defendant as partners are not, the relation between them was of the same confidential and fiduciary character as between partners, and, by analogy, the same remedy in equity may be had for a violation of the trust by either, and a misappropriation or diversion of the stock or funds in which they had a common interest, or from which profits were to be made. Courts of equity hold each partner responsible to the other for all losses sustained by his misconduct or the misapplication of the partnership funds. Story, Partn. § 233. The same remedy exists against any one occupying the position of a quasi partner, involving the same trust, duties, and obligations. The action of the plaintiff was not, therefore, misconceived, whether it be regarded as an action for an accounting and a distribution of the profits, or for the adjustment of losses sustained by the misconduct of the defendant."

So, in Wilcox v. Pratt, 125 N. Y. 688, 25 N. E. 1091, it is said:

"Whether it was a partnership or a joint enterprise, the contract is to be enforced, and the rights and liabilities of the parties determined, upon the same principles as are applied by courts of equity in co-partnership transactions."

The right to an accounting rests in such instances in the trust obligation imposed by each of the persons engaged in the joint enterprise in his associates, and in the control of the joint property which is lodged in each as agent for the others. It is not necessary to cite other authorities for this proposition. It is too well established to be doubted.

Our conclusion is that the judgment appealed from was improperly ordered, and that it should be reversed, and a new trial granted, with costs to appellant to abide event. All concur.