EDMUND BRADDOCK, respondent,

*v.*

J. CLARENCE HINCHMAN, appellant.

[Submitted November 18th, 1910.    Decided March 6th, 1911.]

The complainant, by a written agreement with one Hinchman, since deceased, was to have the entire control and management of an unproductive cranberry bog, a pond and certain buildings for twelve years; expenses and net returns were to be shared equally, and the buildings kept in good repair and insured by the complainant and Hinchman or his executors; in pursuance of the agreement Braddock expended his skill and labor and made the bog productive, but a purchaser from Hinchman's devisees refused to allow him to manage the bog according to the agreement.—*Held*, (1) that this agreement constituted a joint adventure and a subject of equitable jurisdiction; (2) that by its terms the real estate was subject to the joint adventure for twelve years even though Hinchman has died; (3) that a purchaser from Hinchman's devisees with notice of the agreement was chargeable with a trust of the real estate for the benefit of the joint adventure.

On appeal from an order of the court of chancery advised by Vice-Chancellor Walker.

The complainant's bill charges that on June 7th, 1907, a written agreement was made between him and Charles K. Hinchman, now deceased, by which the complainant became the manager and was to have the entire control of Hinchman's cranberry interests at Taunton, comprising the Centennial pond and two houses. The complainant was to have the entire management of the water, flooding, draining, mowing, brushing, picking and sorting fruit, and cleaning, packing and marketing the same. The cost of labor and the expense of the bog and of picking, cleaning and marketing the fruits was to be paid equally by Hinchman and Braddock, and the net amount, after paying expenses, to be divided equally. It was agreed that Braddock should not be required to pay any tax, nor any expense if the

main dam and trunk or gates should be washed away, and that the buildings were to be kept in good repair and insured at the expense of Braddock and Hinchman or his executors, but that in the event of loss by fire Braddock was not to sustain any loss. It was mutually agreed that the contract should continue and be in force for twelve years. The bill charges that the bog was unproductive at the time that Braddock was versed in the culture of cranberries, and that by his labor he has made the bog productive, so that at the time the bill was filed there was promise of a large yield. After the death of Hinchman, the land was conveyed to the present appellant, but the bill charges that both Hinchman's devisees and the present appellant had notice of the agreement and of the partial performance thereof by the complainant, and purchased subject to the complainant's rights. The appellant has since refused to allow the complainant to manage the bog and to pick, sort and market the cranberries according to the terms of the agreement. It prays for a specific performance of the contract and for a decree giving the complainant an equitable lien upon the land superior to the rights of the appellant and for general relief. To this bill the appellant demurred and the vice-chancellor overruled the demurrer upon the authority of *Adams* v. *Schmidt,* 68 *N. J. Éq.* (*2 Robb.*) 16S, and *Burrell* v. *Middleton, 65 Atl. Rep. 978.*

*Messrs. Gaskill & Gaskill,* for the complainant-respondent.

*Mr. Charles R. Stevenson* and *Messrs. French & Richards,* for the defendant-appellant.

The opinion of the court was delivered by

Swayze, J.

We are unable to sustain the order in this case upon the theory that the complainant is entitled to specific performance of the contract as set forth in the bill, or upon the ground of an equitable lien, upon which it was sustained by the vice-chancellor. We think, however, that the bill charges facts which justify the order. The agreement is in the nature of a cropping

agreement. In *Guest* v. *Opdyke, 31 N. J. Law (2 Vr.) 552,* we held that where land was worked on shares under a mere agreement to have a portion of the crop, the parties were tenants in common of the crop, and the relation was not that of landlord and tenant. Subsequently, under agreements worded somewhat differently, we held that the relationship was that of lessor and lessee. *New Jersey Midland Railway Co.* v. *Van Syckle, 37 N. J. Law (8 Vr.) 496* (at *p. 507*); *Reeves* v. *Hannan, 65 N. J. Law (36 Vr.) 249.* The distinction between those cases and the earlier case rested upon the language of the agreement, which must always be of importance. The present case differs from *Guest* v. *Opdyke* in that it involves not an annual crop but the crops of a series of years, derived not merely from the annual cultivation of the soil and sowing of seed, but from a more or less permanent plantation of cranberry bushes. If we were to follow the rule of *Guest* v. *Opdyke,* we should have a case where the parties were tenants in common of successive crops, some of them to be hereafter grown, the right to which would become fixed in equity when the crop came into existence. *Smithurst* v. *Edmunds, 14 N. J. Eq. (1 McCart.) 408; McFarland* v. *Stanton Manufacturing Co., 53 N. J. Eq. (8 Dick.) 649.* The rule has been applied to crops to be raised in a subsequent year. *Cumberland National Bank* v. *Baker, 57 N. J. Eq. (12 Dick.) 231.* The agreement must be read in the light of these decisions, the effect of which was to give Braddock a potential interest enforceable in equity. It cannot be said that the agreement is sufficient to create a partnership between Braddock and Hinchman, since it is evident that neither of them intended to constitute the other the general agent for the management of the business, and neither intended to assume the liability for obligations incurred by the other. There is nothing to indicate an agreement to form a copartnership. *Wild* v. *Davenport, 48 N. J. Law (19 Vr.) 129.* The agreement does, however, evince an intent to enter upon a joint adventure to which Hinchman should contribute the land, with the cranberry bushes unproductive as they were, and Braddock should contribute his labor and skill and knowledge of the business, and each should share in the expense and the profits. That there may be such a joint

adventure, even though the elements of a partnership are absent, appears from our own decisions. *Ross* v. *Stevens, 45 N. J. Eq. (18 Stew.) 231,* was a case of a joint venture of the plaintiff and defendant in the purchase and sale of lands, whereby each was entitled to one-half of the profits, and Vice-Chancellor Van Fleet sustained a bill for an accounting, and his decree was affirmed by this court. In *Warwick* v. *Stockton, 55 N. J. Eq. (10 Dick.) 61,* Vice-Chancellor Pitney held that the agreement was one of joint adventure and not of partnership; he refused to appoint a receiver *pendente lite,* but held that the complainant was clearly entitled to have an account taken in the court of chancery. *Conover* v. *Tansey, 73 N. J. Eq. (3 Buch.) 562,* was a case somewhat resembling the present, and Vice-Chancellor Howell did not question that parties who had entered into a joint adventure were subject to at least some of the rules which regulated partnerships, but he held that under the facts of that case he would not appoint a receiver. Subsequently, in *Jackson* v. *Hooper, 76 N. J. Eq. (6 Buch.) 185,* he dealt again with the subject of a joint adventure, and collected the earlier cases and granted relief to the complainant upon that theory. His decree was reversed, but upon a ground that applied only to the facts of that particular case. Vice-Chancellor Garrison has dealt with the subject in *Simmons* v. *Lima Oil Co., 71 N. J. Eq. (1 Buch.) 174.* It is sufficient to cite of the cases in other jurisdictions, *Marston* v. *Gould, 69 N. Y. 220; Pelrie* v. *Tarrent, 49 N. W. Rep. 1076; Bradley* v. *Wolff, 83 N. Y. Supp. 13.* We entertain no doubt of the general principle that where parties engage in a joint adventure to share profits and losses, equity may entertain jurisdiction very much upon the principles applicable to partnerships.

The difficulty in this case arises out of the fact that Hinchman has died and can no longer perform his part of the contract. If the case were a partnership it would be the duty of Braddock, as surviving partner, to wind up its affairs, and this ordinarily ought to be done at once or with reasonable speed. We have, however, held in *Wild* v. *Davenport, 48 N. J. Law (19 Vr.) 129* (at *p. 137*), that "a stipulation in partnership articles

18

that upon the death of a partner his capital shall remain in the business until the expiration of the prescribed term of the partnership is binding as well upon the estate of the deceased as upon the surviving partner." By analogy, where capital is embarked in a joint adventure for a prescribed term, and the parties have clearly evinced an intent that it should remain in the business until the expiration of the term, it is not to be withdrawn merely because one of the joint adventurers has died. The present agreement by its express terms was to last for twelve years. If there were nothing more in the agreement it might well be contended that it was subject to. the implied condition that both of the joint adventurers should survive in order that the agreement might be carried out according to its terms, but there is language in this agreement which clearly indicates that Hinchman intended that the property should remain subject to the control of Braddock in accordance with the agreement after Hinchman's death. No other meaning can be attributed to the provision that the buildings are to be kept in good repair and insured at the expense of Braddock and Hinchman or his executors. By imposing this liability upon his executors, Hinchman clearly showed that he contemplated that the agreement might last longer than his own lifetime.

The remaining question is whether this agreement can be enforced against the present appellant. This follows almost as a matter of course our conclusion that the property was to be continued in the joint adventure after Hinchman's death. His heirs and devisees held the land in trust for the purposes of the agreement, and the appellant, having acquired his title with notice of the agreement, is subject to the like trust.

We think, therefore, that the objection of the appellant that the case is not a proper case for the jurisdiction of equity fails, and that the jurisdiction may be sustained either upon the theory of an equitable title or upon the theory of a joint adventure, or upon the theory of a trust, or upon all three. In any event, the alleged lack of equity is not so clear that a demurrer to the bill should prevail.

The order is therefore affirmed, with costs.

GARRISON, J. (concurring).

I think that the order of the court of chancery should be sustained upon the ground upon which such order was put by the court below, viz., that of "equitable lien."

The agreement set forth in the bill is of the sort of which Mr. Pomeroy says:

"In a large class of executory contracts, express or implied, which the law regards as creating no property right, nor interest analogous to property, but only a mere personal right or obligation, equity recognizes, *in addition to the personal obligation*, a peculiar right over the thing concerning which the contract deals, which it calls a 'lien' and which, though not property, is analogous to property, and by means of which the plaintiff is enabled to follow the identical thing, and to enforce the defendant's obligation by a remedy which operates directly on that thing. The theory of equitable liens has its ultimate foundation, therefore, in contracts, express or implied, which either deal with or in some manner relate to specific property such as a tract of land * * * and the like. It is necessary to divest one's self of the purely legal notion concerning the effect of such contracts, and to recognize the fact that equity regards them as creating a charge upon or hypothecation of the specific thing, by means of which the personal obligation arising from the agreement may be more effectually enforced than by a mere pecuniary recovery at law." *3 Pom. Eq. Jur. § 1234.*

From the illustrations given in the text and the cases cited in the notes, the pertinent doctrine to be deduced may be stated in this form: An executory agreement in writing, whereby a party so contracts that land of his, therein particularized, is clearly appropriated to the performance of the obligation of its owner created by such contract, gives to the party, with whom he has so contracted, an equitable lien upon the land itself upon which equity may administer a remedy where a mere pecuniary recovery would be inept or inadequate.

This rule applies where, by the owner's contract, the use of his land is essential to a joint undertaking in which by such contract he has engaged, and to which he has therein agreed that the use of his land shall be devoted. Whether or not in such case, more especially in that of an alienee of the land with notice, the remedy will be limited to the injunctive power of the court need not be now decided; upon demurrer for lack of equity

in the bill it is enough that the facts therein set forth exhibit a case of equitable cognizance. The fundamental thing to be borne in mind is that the right to this equitable remedy, which springs solely from the act of the owner of the land, arises whenever he has for his own benefit so dealt with it, or its use, as to create an equitable right in the one with whom he has dealt to have the land applied to the object to which the owner by his contract has devoted it. In fine, equity simply deals with the land in order to require its owner to make his contract just what he himself declared it to be. If, as in the present case, the land has been alienated, the law of notice preserves such remedy as against the alienee, as was pointed out by Chief-Justice Beasley in *Brewer* v. *Marshall, 19 N. J. Eq.* (*4 C. E. Gr.*) *537:* "There is a class of cases," he says, "in which equity will charge the conscience of an alienee of land with an agreement relating to such land, where clearly the agreement neither creates an easement nor runs with the title. This rule has been too frequently acted upon and is too deeply seated in our legal system to be passed by unnoticed or to be rejected as unsound. I regard it as a part of the law."

Upon the ground of equitable cognizance stated, supplemented by this rule of the law of notice, the bill in the present case is good upon demurrer. I therefore vote to affirm the order of the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, MINTURN, BOGERT, VREDENBURGH, VROOM, CONGDON, SULLIVAN—13.

*For reversal*—VOORHEES—1.