(173 App. Div. 670)

## GUTMAN v. LIVINGSTON et al.

(Supreme Court, Appellate Division, First Department. July 10, 1916.)

1. MORTGAGES ⚖⚬298(4)—PAYMENT—SURVIVAL OF LIEN.

Where the dummy holder of legal title mortgaged the property, and thereafter the real owners paid the amount of the mortgage and had an assignment made to a third person, and thereafter guaranteed payment of the mortgage before recording the assignment, it was their evident intent to keep the mortgage alive as an existing lien, and, as they were the owners of the equity, the payment did not extinguish the mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 850–854, 864; Dec. Dig. ⚖⚬298(4).]

2. JOINT ADVENTURES ⚖⚬7—BORROWING MONEY—PRESUMPTIONS.

The mere fact that loans were made in the individual name of one party to a joint adventure does not show that the money was borrowed for his personal benefit.

[Ed. Note.—For other cases, see Joint Adventures, Cent. Dig. § 8; Dec. Dig. ⚖⚬7.]

3. PLEDGES ⚖⚬58(6)—ASSIGNMENT—KNOWLEDGE OF ASSIGNEE—AMOUNT RECOVERABLE.

Where a past-due mortgage, on which interest had not been paid for four years, was assigned to a third person as security for a loan to the assignor and the mortgagors, he could enforce the mortgage only to the extent of the moneys loaned by him, and not to its face value.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. § 194; Dec. Dig. ⚖⚬58(6).]

4. PLEDGES ⚖⚬56(1)—MORTGAGE—SALE BY PLEDGEE—DUTIES.

Though the assignee of a mortgage as collateral security for a loan was empowered on default to sell it without notice or demand, and to purchase it himself, discharged of any right of redemption, he was bound to use good faith in making the sale.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 154, 171–175; Dec. Dig. ⚖⚬56(1).]

5. PLEDGES ⚖⚬56(2)—MORTGAGE—SALE—RIGHT OF ASSIGNEE.

In the absence of a special agreement, the assignee of a mortgage as collateral security for a loan, having knowledge of special equities between his assignor and the mortgagors, could not sell the mortgage, but is bound to foreclose it himself.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 152, 153, 183; Dec. Dig. ⚖⚬56(2).]

6. PLEDGES ⚖⚬56(7)—MORTGAGE—FORECLOSURE SALE—RIGHTS OF PURCHASER—BONA FIDE PURCHASER.

Where the assignee of a mortgage as collateral for a loan, having knowledge of special equities between the assignor and the mortgagors, and being empowered to sell the mortgage at private sale, on the assignor's default sold the mortgage, of a face value of $8,000, with accumulated interest of $2,000, to his daughter for $500, acting as agent for her in the transaction, she was not a bona fide purchaser, and could enforce the mortgage only to the extent to which the assignee could have enforced it.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 169, 170, 182; Dec. Dig. ⚖⚬56(7).]

Appeal from Trial Term, New York County.

Action by Dorothy Gutman against Louis D. Livingston and others.

⚖⚬For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Judgment for plaintiff, and certain defendants appeal. Affirmed, on condition.

Argued before CLARKE, P. J., and McLAUGHLIN, SCOTT, DOWLING, and DAVIS, JJ.

Louis Marshall, of New York City, for appellants.

George L. Ingraham, of New York City, for respondent.

McLAUGHLIN, J. This action was brought to foreclose a mortgage on real estate. It was given September 6, 1906, by the defendant Schreiber to Charles Geiger and Solomon Braverman to secure the payment of $8,000—$4,000 on the 1st of May, 1908, and the balance on the 1st of May, 1909. Geiger and Braverman assigned it to one Minnie Price, who, on the 20th of July, 1910, the principal and interest having become due, assigned it without recourse to one Krulewitch. The record title to the premises then stood in the name of Harris Youdelman, a dummy; the true owners being the appellants Livingston and Lieberman's intestate. The payment to Price was made by them, or on their behalf, and the principal claim made by the appellants on the appeal is that the mortgage was thereby satisfied and discharged. In January, 1914, Krulewitch assigned the mortgage to one Wacht as security for the payment of a loan of $2,500. A part of this loan was subsequently paid, and the balance merged with an additional loan for the aggregate sum of $3,500, upon the same security, by an agreement executed in May, 1914. Krulewitch defaulted in the payment of this loan, and on December 9, 1914, Wacht sold the mortgage at public auction, in accordance with the terms of the agreement. At this sale the mortgage was purchased for $500 by the plaintiff, Wacht's daughter, through Wacht as her agent, and it was accordingly assigned by him to her without recourse. At the time of the sale no interest had been paid since the assignment by Price in July, 1910. The judgment appealed from adjudges the principal sum and interest from that date, aggregating over $10,000, to be due and unpaid, and directs the sale of the premises for the satisfaction of the debt.

[1] The principal contention of the appellants is that the mortgage was satisfied and discharged by the payment in July, 1910, to Price. This contention is not sustained by, but is contrary to, the evidence. In this connection it appears that at that time Livingston and Lieberman were engaged in some sort of a joint venture with Krulewitch, just what is not clearly shown by the record, but which related to the premises covered by the mortgage, and apparently other property. For reasons of their own they preferred to keep the mortgage a lien upon the property, and an assignment was accordingly taken in Krulewitch's name. Two days after the assignment was executed Livingston and Lieberman guaranteed its payment by an indorsement thereon, and the assignment was recorded the following day. It therefore, as it seems to me, clearly appears that Livingston and Lieberman intended to keep the mortgage alive as an existing lien. If they were the owners of the equity, as I think they were, the payment to Price did not extinguish the mortgage, because it was not

their intention to do so. Clift v. White, 12 N. Y. 519; Kellogg v. Ames, 41 N. Y. 259; Coles v. Appleby, 87 N. Y. 114; Ewell v. Hubbard, 46 App. Div. 383, 61 N. Y. Supp. 790. Their intention to keep the mortgage alive is evidenced, not only by the fact that the assignment was taken in Krulewitch's name, but also by the fact that they thereafter guaranteed its payment before the assignment was recorded. Obviously they would not have guaranteed the payment, if they had not intended that the mortgage should remain an existing lien upon the land covered by it.

[2] The purpose of the guaranty was stated by their counsel at the trial, who testified that the reason why the assignment was made to Krulewitch was because it might be necessary to raise money to pay off other liens. At that time, at least, Krulewitch had authority to borrow money for the purposes of the joint venture and to pledge the mortgage as security therefor. No evidence was offered at the trial to show that at the time Krulewitch obtained the loan from Wacht the joint venture had terminated, or that Krulewitch's authority to pledge the mortgage as collateral security for the payment of a loan had been revoked. The loans were made in Krulewitch's individual name, but that fact, of itself, did not establish that the money was borrowed for his personal benefit. It was evidently contemplated that the transaction should be in his name when the mortgage was assigned to him, and its payment guaranteed by Livingston and Lieberman. Although Krulewitch was called as a witness, no effort was made to ascertain from him what disposition he made of the moneys borrowed, and it cannot be presumed that he wrongfully converted the mortgage by pledging it for a personal loan; on the contrary, the presumption is, in the absence of evidence bearing on the subject, that it was for, or in the interest of, the joint venture.

[3] Upon the record as it stands, therefore, the conclusion necessarily follows that when the mortgage was pledged to Wacht he acquired a valid lien thereon, to the extent of the money loaned by him. At the time the mortgage was assigned to Wacht it was, as already indicated, past due, and interest had not been paid upon it for nearly four years, and there is evidence to the effect that he had actual knowledge of the relations existing between Krulewitch, Livingston, and Lieberman. In any event, while he held the mortgage, he was, obviously, entitled to enforce it against the appellants only to the extent of obtaining payment for the moneys loaned by him.

On the 26th of November, 1914, there was due him on the loans made, with interest, according to his own testimony, the sum of $2,250. Had he attempted to foreclose the mortgage in his own interest, it is clear he could only have done so to that extent. This amount would have limited his right of recovery.

[4, 5] The only remaining question is whether the plaintiff acquired any greater rights by her purchase than he had when the sale was made. In the absence of a special agreement, Wacht could not have sold the mortgage, but would have been bound to foreclose it himself. Wheeler v. Newbould, 16 N. Y. 392. But by the terms of his agreement with Krulewitch he was empowered, upon default, to sell the

mortgage at public or private sale, without notice or demand, and to purchase it himself, discharged of any right of redemption. Notwithstanding that fact, he held the mortgage as trustee, and in making the sale was bound to use good faith. Gillet v. Bank of America, 160 N. Y. 549, 55 N. E. 292; Hiscock v. Varick Bank of New York, 206 U. S. 28, 27 Sup. Ct. 681, 51 L. Ed. 945.

[6] What rights the plaintiff might have acquired, had she been a bona fide purchaser at the sale, without notice, it is unnecessary to consider, for it is clear she was not such a purchaser. There are many things to indicate to the contrary. The property was bid in for her by Wacht. He testified that he represented her at the sale. How and when she authorized him to represent her does not appear. He assigned the mortgage to her. She was not called as a witness, and paid only $500 for it, notwithstanding the fact that the principal sum of $8,000 and several years' interest was then due, payment of which had been guaranteed by two, so far as appears, responsible parties. Under the circumstances I think she was chargeable with the knowledge which Wacht had, and acquired no greater or superior rights than he would have had, if he had been the purchaser himself.

A somewhat similar question was decided by the Supreme Court of Illinois in the case of Peacock v. Phillips, 247 Ill. 467, 93 N. E. 415, 32 L. R. A. (N. S.) 42. In that case the Chicago Savings Bank & Trust Company held a note for $2,500, and a mortgage given as collateral security for its payment for $4,000. The note not being paid at maturity, the bank sold it and the mortgage, as it was authorized to do, to the appellant Scudder for $2,530.62, the amount due on the loan. Scudder subsequently attempted to enforce the mortgage for the full $4,000. The owners of the premises defended on the ground that he could enforce the mortgage only to the extent of $2,530.62, the amount due upon the loan for which the mortgage had been pledged, which amount, with interest, they offered to pay him. The court held that Scudder, being a purchaser with notice, could enforce the mortgage only to the extent of the amount due to the bank, saying:

"In case of foreclosure, the equities between the parties would have forbidden an enforcement of the lien for more than the debt to the bank; and the question is whether that result could be accomplished by selling the note and trust deed, in pursuance of the agreement, to one who had notice of the facts. * * * We do not see any good reason for saying that a mere grant of power to sell enabled the bank to confer a greater right upon the purchaser, with full notice of the facts and circumstances and the extent to which the bank could enforce the obligation, than the bank would have had in case of foreclosure."

It seems clear, therefore, that the respondent was not entitled to enforce the mortgage beyond the amount due to Wacht at the time of the sale, viz., $2,250, with interest from November 26, 1914. But as the trial court struck out and refused to admit evidence that would have been material on the question of notice, it is quite possible that neither the respondent nor the appellants presented all the evidence that would otherwise have been produced bearing on that subject. It is consequently impracticable for this court to make new findings; and the judgment will be reversed, with costs, and a new trial ordered,

unless the respondent will stipulate, within 20 days after the entry of the order of this court and the service of notice thereof, to reduce the amount adjudged to be due to the sum of $2,250, with interest from November 26, 1914, in which event the judgment, as thus modified, will be affirmed, without costs to either party.

I am satisfied that no injustice was done to the appellants by the intermediate orders as to which complaint is made.   Settle order on notice.   All concur.