In re TAUB.

Petition of DALZIEL.

(Circuit Court of Appeals, Second Circuit.
December 2, 1924.)

No. 34.

**1. Joint adventures ☞1—Relation between joint adventurers implies an agreement which may be shown by parol or may be implied from conduct of parties.**

The relation of joint adventurers implies an agreement, and the agreement may be shown by parol, or may be implied in whole or in part from the conduct of the parties.

**2. Joint adventures ☞1—Nature of enterprise and not form of agreement controls in determining relation.**

In determining relation between joint adventurers, the form of agreement is immaterial, and it is the nature of the enterprise undertaken by a plurality of persons that controls.

**3. Joint adventures ☞4(1)—Rights and obligations of joint adventurers substantially those of partners.**

The rights and obligations of the adventurers in respect of their enterprise are substantially those of partners.

**4. Joint adventures ☞4(1) — Power of joint adventurer to borrow for joint enterprise is one coupled with interest, and not subject to revocation.**

Power of joint adventurer to borrow for joint enterprise is one coupled with interest, and not subject to revocation.

**5. Joint adventures ☞4(1)—That joint adventurer borrowed in individual name did not show borrowing was for his individual benefit.**

Where one party to joint adventure bought fruit, shipped it to other party, drew drafts on other party for purchase price, discounted drafts with bills of lading as collateral with bank, paid for fruit with money so obtained, and thereafter shared with other party the profit on resale of fruit by other party, the fact that first party borrowed in his individual name by drawing individual draft did not show that borrowing was for his individual benefit, instead of for benefit of the joint adventure.

**6. Joint adventures ☞4(4)—Individual liability incurred by joint adventurer for joint enterprise in nature of advance secured by lien on property of joint enterprise in his possession.**

Where one party to joint adventure bought fruit, shipped it to other party, drew drafts on other party for purchase price, discounted drafts with bills of lading as collateral with bank, paid for fruit with money so obtained, and thereafter shared with other party the profit on resale of fruit by other party, the first party's individual liability to pay for the fruit or to pay bank was in the nature of an advance secured by lien on property of joint enterprise in his possession.

**7. Joint adventures ☞4(1)—Joint adventurer had equitable interest in fruit shipped under straight bill of lading to other party to adventure.**

Where one party to joint adventure bought fruit, shipped it to other party, drew drafts on other party for purchase price, discounted drafts with bills of lading as collateral with bank, paid for fruit with money so obtained, and thereafter shared with other party the profit on resale of fruit by other party, the shipment of the fruit to other party under straight bill vested legal title in other party, but equitably it was the joint property of both, and the first party still had interest of partner in it, and transfer of the straight bills by first party to bank gave bank the same right in the goods evidenced by the bills that the first party possessed.

**8. Joint adventures ☞5(1)—Bill in equity will lie, as for liquidation of partnership affairs, if amount due adventurer is unliquidated.**

If amount due to any adventurer is unliquidated, a bill in equity will lie, as for a liquidation of partnership affairs.

**9. Bankruptcy ☞151—Trustee takes property in same condition in which bankrupt held it.**

Trustee, in cases unaffected by fraud of bankrupt toward creditors, takes property in same plight and condition in which bank held it, and subject to all equities and rights imposed on it when in bankrupt's hands, notwithstanding amendment of June 25, 1910 to Bankruptcy Act, § 47 (Comp. St. § 9631).

**10. Bankruptcy ☞155—Bank, as transferee of rights of one adventurer, held entitled to reimbursement for advance out of proceeds of sale of fruit shipped to other party, as against other party's trustee in bankruptcy.**

Where one party to joint adventure bought fruit, shipped it to other party, drew drafts on other party for purchase price, discounted drafts with bills of lading as collateral with bank, paid for fruit with money so obtained, and thereafter shared with other party the profit on resale of fruit by other party, and, on other party's failure to pay drafts, first party, at bank's instance, diverted many of the shipments, so that at time of other party's bankruptcy, shortly thereafter, some carloads were stored in other party's name and some in bank's name, the bank, as transferee of first party's equitable interest in the fruit and lien securing advance made in purchase of fruit, was entitled, as against other party's trustee, to reimbursement of amount paid out of proceeds of sale of fruit.

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of Louis Taub, bankrupt. On petition of Arthur Y. Dalziel, as trustee, to revise order denying trustee possession of certain assets. Affirmed.

In effect this is a suit between the trustee in bankruptcy and the Yakima Trust Company. There is no substantial dispute about

the facts regarded by us as material. The bankrupt, Taub, was a wholesale fruit dealer in New York, against whom petition was filed November 15, 1922. For some time before he had been dealing in fruit from the extreme northwestern portion of this country through and with one Small of Yakima, Wash., where the trust company carries on a banking business.

The course of business was that Small bought fruit in that general neighborhood in carload lots; he then shipped each lot under a straight bill of lading, with Taub named as consignee, drew a draft on Taub for the price of the fruit in each lot, discounted the draft with the trust company, giving the bill of lading as collateral (each draft referred to the particular shipment on its face), and then paid for the fruit with the money obtained from the trust company. So far as appears, he had to pay out of his own pocket the difference between the face of the draft—i. e., the cost of the fruit—and the amount received on discount.

In ordinary course, Taub on receipt of the fruit sold it as best he could, and he and Small shared the resulting profit, and each bore his proportion of any losses that occurred. The drafts drawn required Taub to pay "on arrival" of the car in respect of the contents of which the draft had been discounted. The bills being straight, Taub was not required to surrender them in order to get the fruit, and the contents of the cars were in ordinary course of business placed on arrival in a warehouse in Taub's name. This course of business went on for months at least.

Within about 1½ months before bankruptcy, Small, in the manner now described, shipped 42 carloads of fruit to Taub, and discounted the same number of drafts (all accompanied by straight bills of lading) with the Yakima Trust Company. Taub failed to pay some of these drafts, whereupon the trust company summoned Small to their aid, and he as shipper diverted as many of the shipments as he could, so that the manifesting or waybilling of the goods required delivery to Yakima Trust Company and not to Taub. Result was that at or about the date of bankruptcy there were 42 carloads of fruit in cold storage at the Railway Terminal, some in Taub's name, some in the name of the trust company, and Taub had paid none of the 42 drafts.

The lower court directed the receiver to sell this perishable fruit for account of whom it might concern, and the question here and below is and was whether the net proceeds of the fruit belonged to Taub's trustee or to the trust company. The lower court decided in favor of the trust company, and the trustee filed this petition.

David Haar, of New York City, for trustee in bankruptcy.

Beekman, Bogue, Clark & Griscom, of New York City (William Campbell Armstrong, of New York City, of counsel), for Yakima Trust Co.

Before HOUGH and MANTON, Circuit Judges, and LEARNED HAND, District Judge.

HOUGH, Circuit Judge (after stating the facts as above). [1, 2] It is proven, and was we think admitted, that Small and Taub were joint adventurers in the enterprise of procuring fruit in the vicinity of Yakima and marketing it in New York. The relation is now legally well known; it implies an agreement, but that agreement may not only be shown by parol (Burkardt v. Walsh, 49 App. Div. 634, 64 N. Y. S. 779); it may be implied in whole or in part from the conduct of the parties (33 C. J. 847, citing cases). The form of agreement is immaterial. It is the nature of the enterprise undertaken by a plurality of persons that controls. Reid v. Shaffer, 249 F. 553, 161 C. C. A. 479.

[3] The relationship once established, the legal rights and obligations of the several adventurers in respect of their enterprise are substantially those of partners. In re Kessler (D. C.) 174 F. 906; Nestor v. Joseph (C. C. A.) 265 F. 246; Irvine v. Campbell, 121 Minn. 192, 141 N. W. 108, Ann. Cas. 1914C, 689.

[4, 5] This particular adventure grew out of a visit paid by Taub to the neighborhood of Yakima some considerable time before the occurrences which gave rise to this suit. The inference is necessary that what was done as above set forth was the result of an agreement to do it made between Small and Taub. That agreement was that Small was to use the property acquired for joint account—i. e., the fruit—as a means of borrowing money; that is, negotiating drafts on Taub upon the faith of the bills of lading. As Small drew the drafts, he remained personally liable to the trust company or any subsequent draft holder. Therefore Small was authorized or empowered to borrow for the joint enterprise; such power is one coupled with an interest, and subject to no revocation. The Seattle, 170 F. 284, 95 C. C. A. 480. That he borrowed in his individual name by

drawing his individual draft does not show that the borrowing was for his individual benefit. Gutman v. Schreiber, 173 App. Div. 670, 160 N. Y. S. 243, aff'd Gutman v. Livingston, 226 N. Y. 582, 123 N. E. 868.

[6] We thus conclude that, when Small discounted his drafts with the trust company, he did so substantially as one partner might have done for the benefit of a partnership; he did it by authority of Taub, and for the benefit of Taub, as well as himself—i. e., for the joint business. His individual liability to pay for the fruit, or to pay the trust company, which had in effect paid for the fruit, was in the nature of an advance made, as it was certainly a liability incurred for the benefit of the joint business. And one joint adventurer, having made advances and having in his possession property of the joint enterprise, may retain it until his lien for advances is discharged. Burhans v. Jefferson, 76 F. 25, 22 C. C. A. 25.

[7] When Small shipped the fruit to Taub under a straight bill, he unquestionably put the legal title in Taub, but equitably the fruit was joint property, and Small still had the interest of a partner in it. The transfer of the straight bills from Small to the bank gave the bank the same right in the goods evidenced by the bills that Small himself had possessed. Hinrichs v. Standard, etc., Bank (C. C. A.) 279 F. 382, at page 385.

[8] Thus Taub was, at date of bankruptcy, conducting a business in New York in his own single name; but he had as a side interest this joint adventure or quasi partnership with Small. The latter had an interest in the joint assets, which authorized him to use them for the joint benefit; e. g., as collateral. For his own advances, or otherwise to protect his rights, he, like a partner, had a lien, enforceable in equity on the partnership assets. In re Kessler (D. C.) 174 F. 906. If the amount due to any adventurer is unliquidated, a bill in equity will lie, as for a liquidation of partnership affairs. O'Hara v. Harman, 14 App. Div. 167, 43 N. Y. S. 556; Reid v. Shaffer, supra.

Small, by his discount of drafts and delivery of bills of lading, transferred his rights to the trust company; and, bankruptcy being equity, the questions are: (1) Whether the bare legal title outstanding in Taub changes the rights of any party; and (2) whether the trustee in bankruptcy stands in any better position than Taub himself. No reason is or can be suggested why the vesting of legal title in Taub, per se, changed the equitable rights of those who had co-operated with him, in conducting a lawful business.

[9] A bankruptcy trustee, ever since the amendment of June 25, 1910, to section 47 (Comp. St. § 9631), in cases unaffected (as here) by any fraud of the bankrupt toward creditors, takes the property in the same plight and condition in which the bankrupt held it, and subject to all equities and rights imposed upon it when in the bankrupt's hands. Rem. § 1402, citing cases.

[10] We will assume that, notwithstanding the diversion orders, Taub held legal title to these 42 carloads of fruit; no holding is necessary on the point. But, even with such assumption, his equitable title, his right as a joint adventurer, was no more than what would be coming to or due by him on settlement of joint account. Therefore, since no creditor or creditors acting through the trustee have shown any superior equity or lien, the lien of the trust company in succession to Small must prevail. The interest of the estate in bankruptcy extends only to a surplus after reimbursing Small—i. e., the trust company—and there is no surplus. In re McConnell (D. C.) 197 F. 438; In re Kessler, supra.

On October 16th last we passed an order herein, on the motion of the Yakima Trust Company, requiring petitioner to print certain additional documents and testimony as a portion of the record. The order provided that, in the event of our considering said documents, etc., unnecessary, the cost of printing the same should be imposed upon respondent trust company. We do think such printing unnecessary, and accordingly impose the costs of printing upon the respondent trust company.

After due allowance is made for the foregoing expense, order affirmed, with costs.