## CHAPMAN v. DWYER.
### No. 260.

Circuit Court of Appeals, Second Circuit.
April 7, 1930.

John J. Cunneen, of New York City, for defendant-appellant.

Grover C. Sniffen, of New York City (William M. Cannon, of New York City, of counsel), for plaintiff-appellee.

Before MANTON, AUGUSTUS . N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

Unless the parties were engaged in a joint venture in the Pennsyl Case, the plaintiff's remedy is not in equity but at law to collect whatever may be due him for services rendered and expenses incurred.

▮ Although the legal significance of joint adventure has come to be widely recognized, it was unknown to the common law, and does not readily admit of short and satisfactory definition. Joint adventurers assume a fiduciary relationship in a single undertaking for profit which gives equity jurisdiction over controversies arising between them concerning the subject-matter as if they were in a technical partnership, Spier v. Hyde, 92 App. Div. 467, 87 N. Y. S. 285; Kraemer v World Wide Trading Co., 195 App. Div` 305, 187 N. Y. S. 16; Braddock v. Hinchman, 78 N. J. Eq. 270, 79 A. 419; but a joint adventurer is not limited to an accounting in equity. He may also sue at law. Joring v. Harriss (C. C. A.) 292 F. 974–978.

These parties undertook to find the Pennsyl heirs as a preliminary to any settlement of the estate. They exchanged information and advice in furtherance of the project. Neither knew where the heirs were, when or how they could be found, if found at all, or which of them, if either, would be successful in the search. They had no express agreement covering what each should do or how the fee should be divided if any fee was eventually obtained. In this search Dwyer was the one who happened to be successful in finding the heirs. They became his clients. While there was no fee or profit to be derived directly from this part of the enterprise, it was so necessary to the ultimate success through settlement of the estate that the search for the heirs was an integral part.

of the entire business and so undertaken for profit. Thus we have in this respect these characteristics of a joint venture, in that the parties combined their skill and knowledge, with each contributing his own expenses, to obtain clients to represent for profit. When Dwyer had secured the clients, he, with no help from Chapman, did the legal work necessary in settling the estate and obtaining the ·fee which made the preliminary work worth while; yet Chapman never withdrew from the business and always stood ready and willing to do what he could to help. That Dwyer neither requested him, or gave him an opportunity, to assist did not change his status at all, for there was no particular thing he was bound to do which he refused or failed to perform. That their relationship was not a partnership is apparent, but that this affair was a joint venture is not equally clear.

Were it enough that each should help or be willing to help without compensation except from the proceeds of the undertaking, there would be no difficulty. That much may be fairly implied from the correspondence between them. But parties who assist each other in doing a piece of work are not clothed with the legal quality of joint adventurers so simply. If they were, it would be necessary only for two or more to work together in a common attempt to accomplish some profitable result and make their pay in some way dependent in whole or in part upon their success. In addition to this, there must be an understanding, express or implied, that each shall share in the profits as such so that each has an equitable interest in the profits themselves. That is what gives rise to the jurisdiction of a court of equity to hear and determine controversies between the parties and to impress a lien upon the profits as in the liquidation of partnership assets. See In re Taub (C. C. A.) 4 F.(2d) 993; Hill v. Curtis, 154 App. Div. 662, 139 N. Y. S. 428, 429. The latter was a case where attorneys joined in the prosecution of claims on a contingent basis under an express written agreement providing that each should pay one-half of the expenses and "that the profit, fee, compensation or other emolument which shall or may be received from the prosecution of said claims, shall be equally divided by and between the said parties hereto." It was held that this ·was a joint venture and the action for an accounting properly cognizable in equity, since the agreement provided for a proprietary interest in the profits. In Zuby v. Height (Sup.) 183 N. Y. S. 88, 89, the agreement was that

the plaintiff should share in the defendant's business "to the extent of one-third of the net profit," and was to have a weekly drawing account to be deducted from his share of the profits, all in return for services rendered in aid of the business. It was held that a share in the net profits was but a basis of computing the compensation to be paid an employee and not enough to create a joint venture.

In this case the business might have been carried out as a joint venture if the parties had had an agreement sufficient to make it so. The burden of proving such an understanding, express or implied, was on the plaintiff. The gist of such an agreement to be proved was that the plaintiff should have an interest in the fee, as such, considered as the res rather than the right to be paid his fair compensation to be determined, either on the basis of what he did or what success attended the efforts of both. The important facts, so far as they do appear, are shown by the correspondence. The inferences to be drawn therefrom are the controlling elements. This leaves the determination of whether or not the parties were joint adventurers a matter of law. With the burden on the plaintiff to show equitable jurisdiction by showing a joint venture and the inferences to be drawn from the facts proved tending to show that Dwyer, with Chapman's acquiescence, and probable approval, took 'over and did almost all the work himself, there is quite as much reason to believe that the parties understood that Chapman was to be paid in the end whatever they might agree to be, or what in fact should be, just remuneration for what he had done, as that any agreement is to be implied whereby he was to have some ownership in the fee itself. How they settled the few other business matters they had and did settle before this, for all of them were not closed, does not help us in determining this question, for each case was settled as the parties agreed, and there was no such uniformity of treatment over a period of time sufficient to create a custom of proprietary interest in fees and of equal fee division, in the light of which their correspondence in this case is to be read to disclose its real meaning. First National Bank v. Burkhardt, 100 U. S. 686, 25 L. Ed. 766.

The proof preponderates in favor of these parties standing in the relation of debtor and creditor rather than that of joint adventurers, and accordingly the decree is reversed, with leave to the plaintiff, if he is so advised, to amend his pleadings and apply for transfer and trial at law.