## DETACHABLE BIT CO. v. TIMKEN ROLLER BEARING CO.

No. 5761.

District Court, N. D. Ohio, E. D.

July 31, 1941.

W. Brown Morton and H. Stanley Mansfield (of Pennie, Davis, Marvin & Edmonds), both of New York City, and Hull, Brock & West, of Cleveland, Ohio, for plaintiff.

John G. Ketterer (of Lynch, Day, Pontius & Lynch), of Canton, Ohio, Luther Day (of Jones, Day, Cockley & Reavis), of Cleveland, Ohio, and Joseph J. Gravely (of Carr, Carr, & Gravely), of St. Louis, Mo., for defendant.

WILKIN, District Judge.

This case is based upon two separate causes of action, referred to by counsel as the equity action and the patent action. There is no reason for a lengthy or discursive opinion. The issues have been thoroughly analyzed and the law clearly presented in thorough briefs. In disposing of the case the court need do no more than indicate its findings and rulings.

### Equity Action.

This cause of action was based upon the allegations of a fiduciary relationship referred to as a joint venture. It was claimed that something like a partnership had existed between the defendant and the plaintiff's predecessor in title and that because of that relationship and disclosures made during the existence of that relationship the defendant should be restrained from entering into competition with the plaintiff and should account to the plaintiff for any profits derived from such competition.

The court finds that the dealings of the parties did not create such a joint venture as imposes equitable or fiduciary responsibilities. There was wanting in the relationship of the parties that common interest, that sharing of liabilities and profits, burdens and benefits which make a partnership or joint venture. There was no relationship of trust and confidence such as exists between a guardian and ward or a trustee and the beneficiary of his trust. The parties met on an equal footing and dealt at arm's length. There was no agreement to assume the relation of partners. There was no agreement to share profits and losses. There was no agreement for joint control of property. The

parties in their dealings acted as separate corporations.

The evidence presents no more than the usual co-operation between a manufacturer and his customer for the development and expansion of the business of the customer. It is true that the parties would receive benefit from such expansion; but the benefit of each would be separate and distinct from the benefit of the other. The interest of the defendant was in increased sales of the raw material or specially treated steel. The interest of the Detachable Bit Corporation was in the sale of its fabricated drills and bits.

It is true that some closer co-ordination between the parties was contemplated. An option was reserved by the defendant for some interest in Detachable Corporation. The right was reserved to convert notes into stock. But the evidence that a joint interest was contemplated for the future is evidence that it was not accepted immediately. The contracts and practices of the parties exclude all belief in such identity of interest as would create a joint venture. In re Taub, 2 Cir., 4 F.2d 993; Bloom v. Leech, 120 Ohio St. 239, 166 N.E. 137; Hutchinson v. Birdsong, 211 App.Div. 316, 207 N.Y.S. 273.

The law which imposes upon those occupying a position of trust and confidence the duty to observe the utmost good faith is well settled, and this court would not willingly undermine its salutary influence. The cases cited by the plaintiff, however, were cases where joint ventures were clearly discernible, and this case may be distinguished from them by its want of identity of interest necessary to bring it within the surveillance of equitable jurisdiction. If this case were held to be one of joint venture, manufacturers generally would have to forego co-operation with customers in sales development for fear of being held accountable as partners in a joint venture.

So far as disclosures are concerned, the evidence reveals that most of them were from the defendant to the Detachable Corporation. The defendant company had had a broader experience in metallurgy and manufacture. The detachable bit business was still in its experimental stage. The evidence reveals that the defendant made suggestions regarding uses of steel, steel treatment, and manufacturing processes.

The defendant finally determined to terminate such co-operation and it asked for payment of the notes which it held against the Detachable Corporation. Whether or not that was a kind thing to do in the circumstances, or whether or not, in view of its effect on good will generally, it was a wise thing to do, are inquiries beyond the purview of this court's jurisdiction. It seems to the court that the defendant was within the exercise of its legal rights. And evidently Detachable Corporation thought so at the time, because it did not then complain of such termination, but, on the contrary, arranged to pay such notes before maturity and continued to deal with defendant.

No doubt the defendant obtained some knowledge from its association with the Detachable Corporation which would prove of value to it in developing a drill business of its own. But the evidence inclines one to the belief that such knowledge related to mistakes which should be avoided rather than to valuable practices revealed or disclosed in confidence.

### Patent Action.

Coming now to a consideration of the patent action, the court is constrained to find the patents of the plaintiff invalid because of indefiniteness, impracticability, and anticipation. The claims relied upon in Reissue patent 16,061 fail to make a disclosure sufficiently definite to satisfy the requirements of Title 35, § 33, U.S.C.A. The claims used indeterminate adjectives which describe a function instead of a structural device. They refer to a bit "formed and tempered to have wear-resisting properties", and a drill rod "formed and tempered to have anti-fatigue properties" and an intermediate member "tempered to have shock-absorbing properties". The evidence discloses that the efforts of both parties during their contractual relationship were directed to the discovery of the means of realizing the properties described in the patent. Their combined efforts failed to develop a commercially useful bit.

The Detachable Bit Corporation was organized *to develop* manufacturing processes by which the bit assemblies which Thurston had made by hand could be manufactured on a quantity basis and at a price to compete with the conventional drill steel. It was not successful in its effort. The language of the patent

shows and the history of the company proves that the patent was indefinite and impracticable. Even the assembly of parts which the patent preferred and which the Detachable Corporation attempted to develop had to be abandoned. Detachable's licensee, Flannery, with the patents and the experience of the Detachable Corporation before it, failed in its efforts for practical development. So far as the evidence discloses, the manufacturers of detachable bits now employ the two-piece assembly.

That the idea of a detachable bit was old at the time plaintiff's patent was obtained, cannot be disputed. The evidence revealed that detachable bits were in use as early as 1855. The plaintiff, indeed, does not claim that its invention covers detachable bits. Its claim is that the discovery in the Thurston patent was " * * * first, that the stresses resulting from the terrific pounding to which a percussively driven rock bit is subjected in service, were concentrated at the joint between the bit and the rod when the bit and rod were made of separable parts, and, second, that a joint in the form of a threaded sleeve when made of steel of such composition and heat-treatment as to give it shock-absorbing properties as its dominant characteristic, would withstand these shocks and stresses."

The evidence discloses that drills consisting of two pieces, bit and rod, had been used prior to the plaintiff's patent. Different heat-treatment for bit and rod was also known and used. The plaintiff's construction was anticipated by the Diamond Drill "E" rod and other structures (Throckmorton No. 347,397, Hawkesworth No. 1,296,078, and Bell South African patent No. 136/13) and the Denver Rock Drill Manufacturing Company in 1924 listed for sale "Detachable Bits".

■ The plaintiff relies also upon claims 8, 9, and 10 of Reissue patent 17,557: "A sectional mining drill having a coupling and its sections and coupling formed with and united by screw threads of smooth, continuously curved and undulatory form". (As stated in claim 8.)

The court finds, however, that such claims were anticipated by prior patents, prior publications, and prior public use. The general shape of such a thread is familiar in such articles as lamp sockets, glass jars, and other articles having a screw socket. The continuously curved thread was previously used in connections subjected to great stress but requiring detachability (Tibbitt No. 806,510; Davenport No. 1,054,181; Nicholson British patent of 1910, No. 17,515), and was described in the South African patent to Bell dated March 13, 1913 for a drill with a detachable bit. As to publications, see "Machinery's Encyclopedia", published by the Industrial Press in New York, 1917, Vol. VI, pages 268, 269, 270, 271 and 275; and "Knight's American Mechanical Dictionary" (1876), page 2061. In view of the evidence in this case, the court is constrained to overrule the presumption of validity which attends the grant of a patent.

■ As to the issue of infringement, the court is of opinion that the defendant's products would infringe the claims of Reissue patent 17,557 if it were valid. But having held such Reissue patent invalid because of anticipation, there can be no infringement.

■■ In view of the foregoing determinations, it is not necessary for the court to pass upon the issue of laches. But the court has already commented upon the apparent acceptance by the Detachable Corporation of the conduct of the defendant when it called for payment of notes not yet due. The assignee of course can have no stronger claim than had the Detachable Corporation. The facts upon which plaintiff's cause of action is based were well known to the Detachable Corporation. It knew of the competition of defendant in 1932. In 1933 a notice was sent claiming infringement. But no complaint was made of any wrongful conduct on the part of the defendant aside from patent infringement. Not until this action was commenced in 1938 was any legal action taken to enforce such claims. In the meantime the defendant had been proceeding with its manufacture of drills with detachable bits, and some of its officers had died. No satisfactory reason or excuse was offered for the failure of Detachable Corporation to enforce its claim at an earlier date.

Complaint dismissed at plaintiff's costs.